**SPEERS SAND & CLAY WORKS, Inc., v. AMERICAN TRUST CO.**

Circuit Court of Appeals, Fourth Circuit.
June 3, 1927.

No. 2538.

**1. Mortgages ⬥209—Trustee in mortgage securing corporate bonds must act in good faith and exercise discretion in proper and open manner.**

Trustee in mortgage securing corporate bonds owes to all parties concerned duty of acting in good faith, and of exercising all discretion vested in it by mortgage in a proper and open manner.

**2. Evidence ⬥60—Trustee in mortgage securing corporate bonds will be presumed to have acted in good faith, absent contrary showing.**

It will be presumed that trustee in mortgage securing corporate bonds, in absence of showing to the contrary, acted in good faith and exercised discretion vested in it by mortgage in a proper and open manner.

**3. Mortgages ⬥398—Trustee in mortgage securing corporate bonds was justified in foreclosing after default for failure to pay interest coupons after proper demand.**

Trustee in mortgage securing corporate bonds *held* justified in instituting suit to foreclose after technical default for failure to pay

interest coupons within six months after proper demand, in accordance with provision of mortgage authorizing foreclosure in such case.

**4. Mortgages ⬥483—Decree of foreclosure of property securing corporate bonds held premature, before determination of ownership of bonds, where title was in dispute.**

Where validity of title of a large number of corporate bonds secured by mortgage was in dispute, decree of sale in foreclosure proceedings before determination of amounts and ownership of such bonds was premature, in that amount of bonds legally issued and ownership thereof was necessary to be known and settled before entry of decree.

**5. Mortgages ⬥467(1)—Appointment of receiver on foreclosure of mortgage securing corporate bonds held necessary and proper.**

Appointment of receiver to take charge of corporate property in foreclosure proceedings by trustee in mortgage securing bonds *held* necessary and proper for preservation and control of only asset.

**6. Mortgages ⬥483—Generally decree of foreclosure and sale of property need not await master's report or decree fixing liability on property.**

Generally decree of foreclosure of mortgage and sale of property thereby conveyed need not await report of master or decree of court fixing liability on property conveyed therein.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit by the American Trust Company against the Speers Sand & Clay Works, Incorporated. Decree for plaintiff, and defendant appeals. Reversed and remanded, with directions.

See, also, 20 F.(2d) 336.

In the court below the appellee was the sole plaintiff and the appellant was the sole defendant, and each will be so designated herein. The plaintiff brought this suit in equity to foreclose a certain mortgage made by the defendant and bearing date on the 29th day of June, 1922. The sole property conveyed therein was a tract of 100 acres, lying on the Severn river in Anne Arundel county, Md., which apparently was supposed by the promoters of the defendant to be of very great value. The mortgage provided for an issue of bonds, designated therein as first mortgage 8 per cent. bonds. The aggregate issue authorized was not to exceed the sum of $1,000,000.

Miss Mary W. F. Speers, owner of the land, conveyed the same to the defendant, and received from the defendant as the purchase price therefor all its stock, being 5,000 shares of nonpar stock, and bonds of

the par value of $500,000, all of which were delivered to her. Of this bond issue remaining George D. Pratt purchased bonds of the face value of $55,600, which were delivered by the plaintiff to him. For these bonds he paid the sum of $50,000, which appears to have been all the money that the defendant ever had. Pratt subsequently brought suit in a court of New York, and obtained a decree, rescinding his subscription for the bonds and rendering a money judgment against the defendant on the 8th of March, 1924, for the amount paid by him therefor, with interest and costs. He retained possession of the bonds. Subsequently he brought supplementary proceedings in aid of an execution, and levied upon certain unissued bonds of the defendant, in the possession of the plaintiff for safe-keeping, of the amount of $368,400, and the same were sold by the sheriff and purchased by Pratt for the sum of $100.

The record shows Pratt as claiming to own bonds of the par value of $424,000, being the aggregate of the foregoing amounts. Upon this claimed ownership, and upon the fact that the interest coupons thereon were not paid, he demanded that this foreclosure suit be instituted, and indemnified the plaintiff against the costs and charges of foreclosure. John E. Johnson and John Meigs were respectively treasurer and vice president, and also directors, of the defendant, and while such, it is claimed by the defendant, there was issued and delivered to Johnson bonds of the par value of $25,000, and to Meigs bonds of the par value of $25,000, the claimed consideration in each case being services rendered to the defendant.

The answer of the defendant denies any legal issue of these bonds, and claims such issue and delivery to be fraudulent. The answer admits the delivery of bonds of the par value of $4,000 to Marion W. Cottle, for services as attorney, but the defendant claims that she afterwards brought an action for money for the same services and obtained a judgment therefor, and that she was no longer entitled to the possession of the bonds. The answer admits the issue and delivery of $3,000 par value of the bonds to Mrs. Mabel Falco, which bonds were in some way transferred to Frances Carduner. The answer admits the issue and delivery of other bonds, of the par value of $400. The answer specifically denies that any bonds, except those delivered first to Pratt, to Miss Speers, to Mrs. Falco, to Miss Cottle, and the amount last mentioned, were legally issued.

There were deposited with the plaintiff, before this suit was instituted, the bonds claimed by Pratt, Johnson, Meigs, Cottle, Carduner, and bonds of the par value of $20,000, claimed by Terence Farley. The record does not show how Farley obtained these. The aggregate of the bonds deposited was $496,500.

The following provisions were contained in the mortgage:

"Article VII. That in case default shall be made by the corporation in the payment of the principal of or any interest upon such bonds, and such default shall continue for the period of six months after demand in writing made for payment aforesaid, the trustee, if it shall so elect, may and if requested in writing by the holders of a majority of the bonds outstanding, and upon being properly and satisfactorily indemnified, shall apply to some court having competent and proper jurisdiction in the premises for foreclosure and sale of the mortgaged premises, property, rights, interest and franchises."

"Article XVII. It is hereby declared and provided, whenever under any of the provisions of this indenture effect is to be given to the election, act, appointment, or assent of a majority of any specified amount or proportion of the bonds secured hereby, any person whose interests are to be affected by such action may require that the ownership of such bonds, by the persons claiming to be the owners thereof, shall be vouched for by affidavit of such owner or his duly authorized agent or attorney having possession of the bonds, stating such ownership of the bonds and giving the number thereof, which affidavit shall be received as prima facie evidence of the fact, but subject to question of its verity and demand for production of the bonds in any controversy or legal proceeding."

There was a written demand for the payment of overdue interest coupons upon the Cottle and Carduner bonds on the 24th day of March, 1924. The amount of money thus demanded was $280. On the 26th day of February, 1925, the plaintiff informed the defendant that it had elected to institute legal proceedings for the foreclosure of the mortgage. The defendant had prior to such time demanded that all persons claiming to be owners of bonds and insisting upon foreclosure should file affidavits, stating such ownership of the bonds and giving the numbers thereof. Again on the 11th day of March, 1925, this demand was renewed; but the plaintiff declined to require such affida-

vits and instituted the suit for foreclosure. The answer of defendant denied the right of the plaintiff to institute this suit, and denied that there were any legally issued bonds, except those theretofore mentioned.

On the 12th day of January, 1926, a decree of foreclosure of the mortgage was entered, and by it a receiver was appointed for the property of the defendant, and such receiver was ordered to sell such property, if it did not within 60 days pay certain installments of interest, totaling the sum of $126,320, and 6 per cent. interest thereon from certain dates therein set out. It was further provided therein that all questions not therein disposed of, including all questions relating to the validity of the title of the respective holders of the bonds and coupons held by them, should be reserved for future decree.

David Ash, of Baltimore, Md., for appellant.

Halbert H. McCluer, of Kansas City, Mo. (Marcia Eisner Lewis, of Chicago, Ill., on the brief), for certain bondholders of Speers Sand & Clay Works.

E. P. Keech, Jr., of Baltimore, Md., for appellee.

Before WADDILL and PARKER, Circuit Judges, and McCLINTIC, District Judge.

McCLINTIC, District Judge (after stating the facts as above). The assignments of error are 15 in number and overlap each other in substance. In our opinion it is only necessary to consider first, those relating to the acts of the plaintiff in instituting this suit; second, whether it was proper to enter the decree of foreclosure and sale on the facts as they appear of record at this time; and, third, the assignments relating to the exclusion of certain testimony.

[1-3] The plaintiff, like any trustee, owed to all parties concerned the duty of acting in good faith and of exercising all discretion vested in it by the mortgage in a proper and open manner. It will be presumed that it did so, unless the contrary is fairly shown. We hold that upon the facts herein it was justified in instituting this suit to foreclose. Under article 7 of the mortgage (supra) there was a technical default when payment of interest coupons on the Cottle and Carduner bonds was not made within six months after proper demand. The failure of the defendant to pay the charges fixed by law upon its charter in the state of its incorporation, and the apparent failure of the project for the development of the property, were strong additional circumstances to cause its discretion to be exercised in favor of the institution of the foreclosure suit. There was no duty incumbent upon the plaintiff to examine into the circumstances of the ownership of the Cottle and Carduner bonds.

It is alleged as error that the plaintiff did not require, prior to such act, the persons claiming to be owners of the bonds to file their affidavits, stating such ownership and the number of each bond. Section 17, supra. It is shown that the persons asking foreclosure had the physical possession of the bonds claimed by them, by the actual deposit of such bonds with the plaintiff, and so far as the record shows it had no knowledge of any doubt as to such ownership thereof, with the exception of a part of the Pratt bonds. The question of the ownership of the bonds was one for the court to decide upon the evidence.

[4] This brings us to the second proposition. Was the decree of foreclosure and sale proper at the time of its entry? The amount of bonds legally issued, and the ownership thereof, were under the circumstances here very necessary to be known and settled before the entry of such decree. Bonds of the par value of $1,000,000 were provided for by the mortgage, and half thereof was delivered to Miss Speers. It does not appear that any other person had any interest in these, although the evidence showed that an unknown portion of them had been hypothecated. Who had them, and under what conditions, does not appear. It appears that, of the other half, $55,600 were sold to Pratt, and that he obtained possession of $368,400 more thereof; that Johnson received $25,000; that Meigs received $25,000; that Marion Cottle received $4,000; that Mrs. Falco received $3,000; and that $400 were delivered to persons not named. The total of these bonds is $481,400. The source of the bonds of the par value of $20,000 deposited by Farley does not appear.

[5] It is denied by the defendants that the Pratt, Johnson, Meigs, and Cottle bonds, aggregating $478,000, are at this time legally outstanding, and that they are liens upon the property conveyed in the mortgage. The appointment of a receiver to take charge of the property of the defendant was necessary and proper, for the preservation and control of its only asset; but under all the facts of this particular case the decree of sale seems to have been premature.

[6] It is a general rule of equity that the decree of foreclosure of a mortgage, and the

sale of the property thereby conveyed, need not await the report of a master, or the decree of the court fixing the liabilities upon the property conveyed therein. However, there are exceptions to all general rules, and in our opinion this case is one of them. The reason therefor lies in the distribution, possession, and claimed ownership of the bonds secured by the mortgage. The plaintiff claims that it had possession of bonds of the par value of $496,500, and that possession thereof was sufficient evidence of ownership, regardless of the claims of the defendant that there was no proof by proper affidavit under the provisions of the mortgage showing title and ownership thereto.

The defendant denied that a large proportion of the bonds so in possession of the plaintiff, to wit, bonds of the par value of $473,500, were legally outstanding, or were in any manner liens upon the property of the defendant, and some doubt was cast upon the title of another part of these bonds, of the par value of $3,000, as to the manner in which the title thereto was derived. There is sufficient evidence in the record in our opinion to require a proper ascertainment of all the bonds legally outstanding and their ownership before a decree of sale should have been entered. The value of the property of the defendant at public sale is not likely to be large, and the owners of the legally outstanding bonds should be in position to bid thereon at such public sale thereof with full knowledge of their liens thereon. Carpenter v. Longan, 16 Wall. (83 U. S.) 271, 21 L. Ed. 313.

If the District Court should find the Pratt holding of bonds, the Johnson and Meigs holding of bonds, and the Cottle holding of bonds, or any other of the bonds claimed to be secured by the mortgage, to be now not legally held, and that such bonds are not liens under the mortgage on the land conveyed, the situation of the legally outstanding bonds would be materially changed. The defendant and the holders of all bonds, the title of which is undisputed, have the right to have such questions adjudicated, and the amounts and ownership of the bonds fixed and determined, before the sale of the mortgaged property is authorized by the court. This is especially true in the instant case, where the validity and title of such a large quantity of the bonds is in dispute.

The exclusion of certain testimony constitutes the last three assignments of error. The evidence whether Meigs and Johnson became legal owners of certain bonds will be pertinent when the liens upon the property are ascertained. Under the case as it now stands, the evidence as to an alleged contract between Miss Speers and Pratt, relative to the purchase of the land owned by the defendants, and the evidence as to reports of the value thereof made by certain alleged experts, was properly excluded.

The decree filed herein on the 12th day of January, 1926, is hereby reversed, and this cause is remanded, with directions to properly ascertain what bonds were legally issued and outstanding and are liens upon the property conveyed in the mortgage, and that such further proceedings be had herein as are according to the rules and practice of a court of equity.

Reversed.