SPEERS SAND & CLAY WORKS, Inc., v.
AMERICAN TRUST CO.
No. 3171.

Circuit Court of Appeals, Fourth Circuit.
Oct. 12, 1931.

Mary W. F. Speers, of Gainesville, Ga., for appellant.

John B. Deming and Keech, Deming & Carman, all of Baltimore, Md., for appellee.

Marshall, McLean and McLean & Ferris, all of New York City, for George D. Pratt.

Before PARKER, Circuit Judge, and WEBB and CHESNUT, District Judges.

PARKER, Circuit Judge.

This is an appeal from a decree of the court below confirming a foreclosure sale, and is the fourth appeal by which the case has been brought before this court. On the first appeal, 20 F.(2d) 333, we held that the trustee under the deed of trust had properly exercised its discretion in applying for foreclosure, but that a decree was premature which ordered a sale in advance of the ascertainment of the indebtedness secured. On the second appeal, we set aside the sale which had been made under the decree reversed in the first appeal. 20 F.(2d) 336. Under the opinions of the court rendered in these two appeals, the only question left open for decision was as to the amount of bonds outstanding; and the case was remanded in order that this question might be determined and the foreclosure concluded. The District Court then determined the question as to the amount of the validly issued and outstanding bonds secured by the deed of trust in controversy, allowed defendant to file an amended and supplemental answer raising questions of fraud against the trustee, which were decided adversely to defendant's contention, and entered a decree of foreclosure directing the sale of the land embraced in the deed of trust. This decree was affirmed by this court on the third appeal. 37 F.(2d) 572.

Thereafter the receiver appointed by the court below proceeded with the sale ordered in the decree of foreclosure, and, after due advertisement, sold the property at public auction on May 29, 1930, to George D. Pratt for the sum of $6,000, and duly reported the

sale to the court. Exceptions were filed by the defendant to the sale, and strenuous objections were entered to its confirmation. The matter was set down for hearing on August 18th on the exceptions filed; but, upon motion of defendant, the hearing was continued, first to October 6th, and then to November 6th. Defendant was not represented by counsel, but Miss Mary W. F. Speers, who owned the stock and the greater portion of the bonds of the corporation, had been appearing for it and had obtained the continuances on August 18th and October 6th on the ground of personal illness. At the time of the last continuance, however, the judge had entered an order that the matter would not be again continued on account of her illness, unless she should produce a physician in court to testify to same or should agree to submit to an examination by a physician to be appointed by the court. Without complying with these conditions, she sent a telegram to the court on November 6th, stating that she was too ill to attend or to procure counsel. The court, however, proceeded with the hearing, and, finding that the property had sold for a fair price under the circumstances, and that the sale had been regularly advertised and conducted, entered a decree of confirmation. Later defendant moved for a rule to show cause why this decree should not be vacated and set aside; and the court, on December 10, 1930, entered an order that rule issue, provided defendant, or some one in its behalf, file bond or make a deposit in the sum of $6,000 as security for costs and damages which might be sustained by reason of the granting of the rule. Defendant, however, ignored this order, and appealed from the decree of confirmation.

The assignments of error cover many matters, most of which have been decided adversely to defendant on the former appeals, and cannot be retried in this manner. So far as they relate to matters properly arising on this appeal, they present two questions: (1) Whether the judge below abused his discretion in refusing to continue the case further and in proceeding with the hearing on the exceptions in the absence of Miss Speers; and (2) whether he abused his discretion in confirming the sale which was attacked on account of alleged irregularities and inadequacy of price. After a careful examination of the record, we think that both of these questions must be answered in the negative.

█ As to the first question, it is, of course, well settled that the granting of a continuance is a matter resting in the sound discretion of the trial judge, and that the exercise of this discretion will not be disturbed, in the absence of abuse. Not only does the record here not show any abuse of discretion on the part of the trial judge in refusing a further continuance of the case, but it shows, to the contrary, unusual indulgence notwithstanding manifestly dilatory tactics on the part of Miss Speers. The record prior to the third appeal shows that the proceedings had been repeatedly delayed by Miss Speers' claims of illness; and, after the decision of this court in the third appeal and the sale of the property under the decree of foreclosure, the same dilatory methods were resumed.

As stated, the sale was held on May 29th. Report was made and order nisi entered on June 3d. This order allowed until July 9th for cause to be shown against confirmation; and Miss Speers, although she had been present at the sale, waited until the last day allowed to file her exceptions. On July 12th the exceptions were set down to be heard on Monday, August 18th, and full notice of the hearing was given Miss Speers. At the time appointed, the Circuit Judge assigned to hear the case journeyed all the way from Huntington, W. Va., to Baltimore, where he was met with a petition from Miss Speers, mailed the preceding Saturday from Litchfield, Conn., stating that she was ill, and confined to her bed under the care of a nurse and a physician, and for that reason asking a continuance of the hearing for a period of six weeks. Accompanying the petition was the affidavit of two physicians. The judge thereupon entered an order continuing the cause to October 6th.

On the 6th of October, being the second day set for the hearing, the judge again went from Huntington to Baltimore, having received in the meantime no intimation that Miss Speers would not be ready. Here he was met with another petition sent from Litchfield, again asking a continuance on the ground of illness of Miss Speers, and this time requesting a continuance of thirty days. Accompanying it was an affidavit from the same physicians who had made the former affidavit. Attorneys for defendant, on the other hand, presented an affidavit as to an investigation made of the alleged illness of Miss Speers on August 18th, from which it appeared that she had arrived in Litchfield on August 15th and had immediately sought to get in touch with a physician who would give her a certificate of illness; that the physicians who gave the affidavit had made no physical examination, but had given the

affidavit on the basis of verbal statements; and that Miss Speers remained in Litchfield only until August 25th. Notwithstanding this affidavit, the judge granted the continuance as prayed for thirty days, setting the hearing for November 6th at 10 o'clock. In the order of continuance, however, he inserted the following provision: "The Court will not consider further applications for postponement on account of the illness of Miss Speers, unless her attending physician shall appear before the Court in person in support thereof, or unless the said Mary W. F. Speers shall submit herself for physical examination by a physician to be appointed by the Court."

On November 6th, the third day set for the hearing, the judge was again in Baltimore ready to proceed at the hour appointed, but Miss Speers did not appear. No physician appeared to testify as to her illness, but the judge received through the mail an affidavit of a physician in Philadelphia to the effect that she was ill and had been admitted to a hospital in that city on the afternoon of the preceding day. Attorneys for defendant filed an affidavit as to an investigation made of the alleged illness of Miss Speers on October 6th, wherein it appeared that she had arrived in Litchfield about 8 p. m. on Saturday, October 4th, and had left on Tuesday, October 7th, on an early morning train. The judge thereupon proceeded with the hearing. While it was in progress, he received a telegram from Miss Speers stating that she was too ill to attend, and that a Detroit lawyer whom she had employed had returned home under promise to send an associate, but had wired that the associate would not attend. The judge received also a telegram purporting to be from a Philadelphia physician, which stated that Miss Speers had been admitted to a Philadelphia hospital suffering from bronchitis. No request was made for a continuance of the case in either telegram, and no offer was made to comply with the terms of the order of October 6th by having the physician appear in court and testify; nor did Miss Speers offer to submit to an examination by a physician to be appointed by the court. In directing that the hearing proceed, the court said: "As has occurred twice before, the Court has been met with telegrams and affidavits of this character on the very day set for the hearing. Miss Speers' statement as to a Detroit attorney is simply a repetition of various statements of similar character made by her throughout this proceeding, and in no case has she given the name of the attorney or offered any evidence as to the employment of an attorney. She has repeatedly promised the court that she would do so, and from her own statement has had ample opportunity to do so, and I am not going to further postpone action in this matter."

After the entry of the order of confirmation on November 6th, however, the judge, on a motion for a rule to show cause why the decree of confirmation should not be vacated, ordered that the rule issue, provided bond be filed or deposit made as security for costs and damages. This order was ignored; and, after waiting until the last day allowed for appeal from the decree of November 6th, petition for appeal from same was filed.

These facts need no comment. It appeared to the judge, and reasonably so, that continuances were being sought for the purpose of delay; and he was perfectly right in putting a stop to what he regarded as an attempt to trifle with the court. After two continuances on the ground of the alleged illness of the representative of defendant, he properly ordered that no further continuance would be granted on such ground without a showing in open court which would satisfy him of its bona fides. And, when no such showing was made on the third date set for the hearing, he was acting well within his discretion in proceeding with the hearing. Under such circumstances, it was not an abuse of discretion not to grant a continuance. It would have been an abuse of discretion to have granted one. By the tactics employed, Miss Speers had delayed the confirmation of this sale for more than five months. If she should be held entitled to continuances upon such grounds as here appear, she might delay it indefinitely.

We come, then, to the second question; i. e., whether there was abuse of discretion in confirming the sale which was attacked for alleged irregularities and inadequacy of price. The record shows no irregularities. The sale was regularly advertised and regularly held. Miss Speers appeared, and, when the property was offered, she bid $100,000 for it, and it was "knocked down" to her at that price. The receiver then called on her for the deposit of $5,000 required under the order of the court. This she was unable to make, but said that her lawyer from Washington, who was to bring money for the purpose, had failed to arrive. She refused upon request to give the name of this lawyer; but, nevertheless, the receiver held the sale open half an hour for the lawyer's arrival. At the

end of that time, the lawyer not having arrived, and Miss Speers not having complied with the terms of sale by making the required deposit, the property was again sold, and was purchased by a representative of George D. Pratt for $6,000. Although a number of persons were present at the sale, and same was openly and fairly conducted, only two bids were offered for the property, one of $5,000 and one of $6,000. It appears that both of these bids were made by representatives of Pratt, and defendant attacks the sale for this reason. It is not for the owner, however, but for the purchaser at an auction sale to complain of "by-bidding." The point that the sale was void because there was only one real bidder is so manifestly lacking in merit as not to justify discussion.

As to the adequacy of price, a real estate dealer of the neighborhood acquainted with the property testified that in his opinion it would not bring at a cash sale more than the price bid, although it would probably bring ten or twelve thousand dollars if terms could be arranged; and there was no testimony to the contrary. It appears that on June 21, 1926, when property generally was worth much more than at the time of the hearing before the judge, this property was sold at auction for only $15,500. The question as to whether the sale should be confirmed was a matter resting in his sound discretion; and certainly, in the light of this evidence, we cannot say that there was an abuse of discretion in confirming it.

If we thought the property were worth $40,000,000, as asserted by Miss Speers in her brief, or even if we thought it were worth $100,000, the amount bid by her, or anything like that amount, we would think a bid of $6,000 grossly inadequate; but there is no basis for thinking that its value is other than shown on the hearing on the question of confirmation.

The 100 acres of land covered by the mortgage is rural land on the Severn river in Anne Arundel county, Md. It is part of 150 acres originally owned by Miss Speers, which in the year 1921 was subject to a mortgage to Howard A. Kelly for $29,000 containing a provision that, upon the payment of $20,000, 100 acres of the land would be released from the mortgage. It was also subject to various tax and judgment liens. The Speers Sand & Clay Works was organized by Miss Speers; and to it she conveyed 100 acres of the land which was subject to the mortgage and to the tax and judgment liens. For this conveyance she received the entire stock issue of the corporation, being 5,000 shares of nonpar stock, and $500,000 of an authorized issue of $1,000,000 of first mortgage bonds. Some of the remainder of the bonds were delivered to agents and employees of the corporation. Some of them went to an engineer who furnished a report as to the value of clay deposits upon which Miss Speers bases her idea of value. $55,600 of them were sold by Miss Speers to George D. Pratt for $50,040 in cash; and this money was used to extinguish the mortgage on the land and to pay off the liens and incumbrances on same. So far as this record shows, this is the only money received by the corporation from any bondholder or stockholder; and so it appears that, although Pratt owns only about 10 per cent. of the outstanding bonds, more than half of his money paid into the corporation has gone directly into the land, relieving it of mortgages and liens, according to the record, of $29,297.75, the remainder being used by the corporation in paying salaries, expenses, etc.

Some time after Pratt had made the investment in the bonds, he charged that the company was not being operated, and the money paid by him for bonds was not being expended according to agreement. He also charged that he had been induced to make the investment by fraudulent misrepresentations. He thereupon brought a suit in the Supreme Court of New York charging fraud against Miss Speers and against the corporation, and asking that his purchase of the bonds be rescinded on that ground. The court found fraud as charged, granted rescission, and decreed that, in the event Pratt's subscription were not returned to him, he have judgment for $50,040. The subscription was not returned, he was unable to collect the judgment, and so he called upon the trustee under the mortgage securing his bonds to proceed with foreclosure. It was then that this suit was instituted. It appears, therefore, that, if Pratt is getting a bargain in this land, it is land in which he has already lost more than $50,000 as a result of what has been judicially determined to be a fraud of the defendants.

Miss Speers' contention that Pratt is fraudulently seeking to acquire the land because of its supposed value is not supported by the record. He apparently entertained at one time the opinion that it was valuable, but this was probably because of the representations made to him by Miss Speers, which have been found by the New York court to have

been fraudulent. He has filed a written offer with the court to convey the land to her upon reimbursement of the amount which he has invested, with interest; and this amount is less by far than the $100,000 bid of Miss Speers. Her contention that this is a proposal to defraud bondholders is not understandable. It could be no fraud upon bondholders for Pratt to be repaid the money of which he has been defrauded; and, if the conveyance is made to Miss Speers, she will, of course, hold title for the corporation and bondholders for whom she is acting.

The above brief history of the land and of the connection of the parties with it shows that in the final analysis Pratt has not obtained the land in question at a bargain, but that, in reality, if he gets it at $6,000, it will have cost him $56,040, of which amount approximately $35,000 will have been paid directly for the land, i. e., $29,297.75 of the amount fraudulently obtained from him for bonds went to extinguish mortgages and liens, and this added to the $6,000 bid for the land makes $35,297.75. These considerations, however, merely go to the general equities. We base our decision, not on them, but upon the uncontradicted testimony at the hearing to the effect that the price was not grossly inadequate, upon the fact that the sale was openly and fairly conducted after full advertisement, and upon the fact that no raised bid has been offered for the property. Pratt owns only about one-tenth of the bonds validly issued and outstanding. Consequently nine-tenths of any amount realized at the sale after paying the costs and expenses of the foreclosure would go to the other bondholders. None of these has been sufficiently impressed with the value of the property to come into court and, as a basis for objection to the confirmation of the sale, offer an increased bid with proper security. In fact, no one has objected to the sale except Miss Speers, who claims to represent other bondholders as well as the defendant; and not even she has offered to raise the bid and give security that she will pay for the land if sold to her at such bid upon a resale. If she had done this, the learned judge below would doubtless have ordered a resale. In entering the decree of confirmation, he said:

"The court confirms the sale for two reasons: First, because it is satisfied from the evidence that no better price can be obtained in the near future for the property than has been obtained, and even if a greatly increased price, up to the amount brought by the property at the former sale when business conditions were much better than they are now, could be obtained, the proceeds would not be sufficient to pay the costs of this litigation, aside from the supersedeas bond. Second, because Mr. George D. Pratt is the only party litigant in this suit who, apparently, has any real money involved in the case. Of course, the Speers Sand & Clay Works had their property, but the court is satisfied that it was not as a whole, and never would be worth anything like the amount that Mr. Pratt paid in cash for a very small percentage of the bond issue. I cannot avoid feeling that further delay would only add to the costs in the case and do nobody any good, and especially in view of Mr. Pratt's offer that if the sale is confirmed to him he will turn the property over to Miss Speers for the amount of money that he has involved in the matter, a less sum than Miss Speers says in her petition she is willing to pay for it."

The rule is well settled that "a judicial sale regularly made in the manner prescribed by law, upon due notice, and without fraud, unfairness, surprise or mistake, will not generally be set aside or refused confirmation on account of mere inadequacy of price, however great, unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud, unfairness, or mistake." 16 R. C. L. 95; Pewabic Mining Co. v. Mason, 145 U. S. 349, 12 S. Ct. 887, 36 L. Ed. 732; Everett v. Forst, 50 App. D. C. 215, 269 F. 867, 15 A. L. R. 789. And it is equally well settled that whether the price bid is grossly inadequate and whether and upon what grounds confirmation should be refused are matters within the judgment and discretion of the tribunal ordering the sale, with the exercise of which an appellate tribunal will not interfere except in cases of abuse. Jacobsohn v. Larkey (C. C. A. 3d) 245 F. 538, L. R. A. 1918C, 1176. From the facts stated, it is clear that there was no abuse of discretion by the court below.

The decree appealed from will accordingly be affirmed.

Affirmed.