## In re LINCOLN TRUST CO.

### No. 2314.

District Court, D. Nebraska, Lincoln Division.

Jan. 17, 1934.

644

Earl Cline and Frank D. Williams, both of Lincoln, Neb., for appellants.

R. A. Boehmer, of Lincoln, Neb., for trustee.

DONOHOE, District Judge.

This cause has been submitted on a petition for review of an order of the referee allowing trustee's claims for advancements in connection with the Harriman loan, No. 26108.

The order complained of allowed the trustee for the bankrupt a first and prior lien for all taxes, insurance premiums, repairs, and seed paid and furnished by the bankrupt, after deducting the amounts collected from rentals, which lien amounted to the sum of $2,514.55, and a concurrent lien with the bondholders in the sum of $1,050, for interest coupons taken up by the Lincoln Trust Company, and which order directed the sale of the mortgaged property by the trustee, free from liens.

The following facts have been established without dispute:

(1) That on or about the 31st day of March, 1927, the bankrupt made a loan to one Ethel Harriman, in the sum of $7,000, and as evidence of the debt and security therefor, Ethel Harriman executed to the bankrupt a real estate mortgage on 151 acres of land in Scottsbluff county, Neb., securing 11 promissory bonds, with interest coupons attached, each bearing even date with the mortgage. The mortgage among other things provided:

"(1) If mortgagor shall fail to pay such taxes and assessments or procure and maintain such insurance or remove any lien prior to this mortgage, mortgagee may pay such taxes and assessments and procure such insurance, and may pay such prior lien in whole or in part as mortgagee shall elect; and the sum so advanced with interest at ten per cent per annum shall be repaid by mortgagor, and this mortgage shall stand as security therefor.

"(2) A failure to pay any of said money, either principal or interest, when the same becomes due, or a failure to comply with any of the foregoing agreements, shall cause the whole sum of money herein secured to become due and payable at once at the option of mortgagee, without notice, and the whole indebtedness shall bear interest at the rate of 10% from the date of default; or mortgagee may foreclose only as to the sum past due without injury to this mortgage or the displacement or impairment of the lien thereof. * * *

"(6) In case of any of the bonds or coupons secured hereby are held by other parties than the mortgagee, the parties hereto hereby constitute and authorize the Lincoln Trust Company of Lincoln, Nebraska, as trustee under this mortgage, for the use and benefit of the holders of the debts secured hereby, with full power and authority upon maturity of this mortgage or the debts secured thereby, either by the lapse of time or by failure to perform any of the terms or conditions hereof, to foreclose or enforce collection or payment of this mortgage and the debts secured thereby, or in case of loss or damage to collect and receipt for insurance thereon; to satisfy and release of record or otherwise this mortgage or said debts; to make distribution of the proceeds thereof to the holders or owners of said bonds or coupons after payment of the costs and expenses thereof, and to do all things necessary or suitable to the performance of said duties and the exercise of said powers."

The bonds were payable to the Lincoln Trust Company, or order, and provided: "Both said principal and interest are payable at the office of the Lincoln Trust Company in the city of Lincoln, State of Nebraska, and bear interest at 10% per annum, after maturity."

The bond further provides: "If default shall be made in the performance of any covenant or undertaking of said mortgage, then and in that case, this bond shall become due and payable at once without notice or demand, at the option of said Lincoln Trust Company."

The bond contains the further provision: "It is further agreed that all pay-

ments to be made on this bond, whether principal or interest, shall be made to said Lincoln Trust Company, for the benefit of the holders thereof."

The coupons provide: "The undersigned promises to pay to the bearer * * * at the office of the Lincoln Trust Company, Lincoln, Nebraska, with interest at the rate of 10% per annum after maturity."

(2) That the bankrupt in the month of July, 1927, sold and delivered all of the bonds except one to the various bondholders. The one bond of $500 remaining was sold to Mrs. Grace H. Clark and Wesley Clark, on the 30th day of July, 1930, and that the said purchasers have at all times since the date of their purchase been the owners and holders of the bonds, and are now such owners and holders, none of which bonds have been paid.

(3) That the mortgagor made default in the payment of interest coupons, which fell due from and after the 30th day of September, 1929, and failed to pay taxes on the land after the year 1926, and that the mortgaged premises were sold for nonpayment of taxes.

(4) That the Lincoln Trust Company on April 15, 1930, redeemed the mortgaged premises from the tax sale, paying to the county treasurer the sum of $1,815.20, and on June 20, 1930, paid to the county treasurer the taxes for the year 1929, amounting to the sum of $840.35, and between April 17, 1930, and May 15, 1930, paid from its own funds to the other bondholders on surrender of their coupons due March 31, 1930, the sum of $210, being interest which became due March 31, 1930.

(5) That on July 7, 1930, Lincoln Trust Company commenced a suit to foreclose the mortgage. Thereafter, on the 2d of February, 1931, the mortgagor in satisfaction of the mortgage debt conveyed the mortgaged premises by quitclaim deed to the Lincoln Trust Company, who then took possession of the real estate, and has collected the rentals from said date, in the sum of $1,109.-33, and since then has paid taxes in the sum of $853.50, insurance, $45.94, repairs, $15.-35, and clover seed, $52.74. That neither in the foreclosure proceedings, nor in the quitclaim deed was the Lincoln Trust Company described or designated as "Trustee."

(6) That after obtaining the deed, and taking possession of the premises, the Lincoln Trust Company disbursed to the noteholders, on surrender of the coupons due September 30, 1930, to March 31, 1932, inclusive, the sum of $840; that the Lincoln Trust Company has not been reimbursed for any of the moneys so paid out, except from the rentals collected.

(7) That the bondholders had no notice of the default and the execution of the deed, except possibly Mrs. Robinson, who might be chargeable with the knowledge of her daughter, who handled the transaction for her mother.

The successor trustee contends that all of the payments were made by the Lincoln Trust Company, as the owner of the mortgaged premises; that it is now such owner, subject to the lien of the bondholders. The trustee for the bankrupt on the other hand contends that the foreclosure was commenced, the deed taken, payment of taxes and insurance was made, and the repairs and seed furnished, as trustee under the mortgage for the benefit of the bondholders, and that the money advanced for interest payments was advanced as an accommodation, and that the transaction constituted an assignment of the interest coupons.

The evidence does not persuade us that the Lincoln Trust Company at that time became the owner of the mortgaged premises, nor that the money advanced by it was disbursed as such owner. At the time the foreclosure proceedings were commenced, it would seem from the evidence that the Lincoln Trust Company was the owner and holder of one of the bonds. It was specifically provided in the deed of trust that, in case of a failure to pay taxes or procure insurance, the mortgagee might pay the same, and the mortgage would stand as security therefor, and that in case of failure to pay any money, either principal or interest, when the same became due, the mortgagee had the option to declare the entire indebtedness due and payable at once, and provided that it might foreclose. As to the bondholders, the trust deed specifically provided that the Lincoln Trust Company, as trustee under the mortgage, for their use and benefit, was clothed with full power and authority in case of default to foreclose or enforce collection of payment; in case of loss or damage to collect and receipt for insurance, and to make distribution of the proceeds, after deducting its costs and expenses, and to do all things necessary or suitable in the performance of its duties, and the exercise of its powers in that behalf. If conditions were reversed, and there was now a profit instead of a deficit, no one

would contend that the Lincoln Trust Company was entitled to pocket that profit. The mere fact that in the deed, or in the foreclosure proceedings, that the Lincoln Trust Company was not designated as trustee would not change the relationship of the parties, which is to be determined from the provisions of the deed of trust.

■ With reference to the taking up of the interest coupons, we see no impropriety in the trustee taking up and holding these coupons. It may be gathered from the evidence that the trust company was engaged in the negotiation and sale of mortgage securities. The bondholders were certain of its customers. It was to the interest of the trust company that its customers should not be disturbed concerning their investments. No preference or priority is claimed for its coupons. Its claimed interests under these coupons are precisely those of the other bondholders, and there is nothing to indicate any breach of duty as against them. The commencement of the foreclosure suit, the obtaining of the deed, and the advancement of the large sum of money as shown by the evidence was not in any way prejudicial to these bondholders, but rather was it to their benefit, and we think they are not in a position to complain. But it is earnestly urged that the trustee misled the bondholders by not notifying them of the default. A complete answer to this is, that first there was no provision in the trust deed requiring any such notice; and, second, had the notice been given, What might the bondholders have done which the trustee did not do? The evidence shows that foreclosure was promptly commenced upon default; that the title to the security was saved by the payment of taxes; that immediate possession was taken of the farm and the rentals were collected therefrom, all of which has been duly credited. The property was insured and kept in repair. No suggestion is made that the property could be sold at any price. Notice of these defaults and payments to the bondholders would necessarily be accompanied by numerous statements calling for contributions when the payments were made. This would necessarily have disturbed these investors of the trust company, and without doubt the trust company preferred to give the bondholders the use of its money in order to save the time and labor necessary to collect it in, and in order not to disturb the confidence of its customers in the investment. For the use of that money no interest is be-

ing asked or charged. This was all to the decided benefit of the bondholders, and not to their prejudice, and we think they are not in a position to complain in that behalf.

■ There appears in evidence a letter, under date of November 6, 1931, from C. C. Carlson, president, addressed to Mr. P. S. Chapman, Fred E. Body, and E. S. Ripley in the office, and a copy of a purported reply from E. S. Ripley addressed to C. C. Carlson, under date of November 9, 1931. In Mr. Carlson's letter, he calls attention to the fact that the books with reference to such transactions as are involved were not being made up in the right way and directing that accounts should be kept in a "trustee capacity," and asking for their advice as to how it should be set up. In Mr. Ripley's purported reply, the statement is made that he has given the matter some thought for several months past, and that he thinks under the circumstances the best thing to say to the holders is that they hold the property as trustee for them; that he thinks that if they are not willing to accept that relationship they cannot force the issue; that the bondholders were really entitled to the security which they held, although the foreclosure was not handled as trustee foreclosure, and that it may be difficult to get the bondholders to take the property over and relieve them from liability, but that was the thing to do if it could be worked out, and that he had no idea as to how the matter should be set up on the books, since he was not an accountant. It is contended that this constitutes an admission on the part of the trust company that it took the title and ownership of the property in its individual capacity. There is nothing in the evidence to indicate that the Harriman loan was in any way referred to in this correspondence; nor is there any evidence to indicate that the trust company is bound by any admission by E. S. Ripley, an attorney. It appears from the evidence that Mr. Ripley was the attorney who commenced the foreclosure proceedings. He was not an executive officer of the defendant company, nor did he have anything whatever to do with the payment of the moneys involved. This copy of a letter was found by some one among the files after Mr. Ripley's death. There is nothing to show that the original was ever mailed or delivered or that the statement contained in this copy was ever assented to by any of the executive officers of the

company, and consequently we conclude that this Ripley letter has no evidential value.

The federal cases relied on by the petitioner, we think, are not applicable in this case, because they were decided and determined upon a state of facts entirely different from those we are now considering. We will not take the time to review the other cases cited, having concluded, as we do, that this case is governed by Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868; and Anderson v. Pennsylvania Hotel Co. (C. C. A.) 56 F.(2d) 980; Union Trust Co. of Lancaster v. Berwick Consolidated Gas Co. (C. C.) 196 F. 511; Speers, etc., Co. v. American Trust Co. (C. C. A.) 20 F.(2d) 333; Gisborn v. Charter Oak Life Ins. Co., 142 U. S. 326, 12 S. Ct. 277, 35 L. Ed. 1029.

We have therefore concluded that the referee in bankruptcy did not err, and that his order should be affirmed. It is so ordered.