# CASES

## ARGUED AND DETERMINED

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

STURGISS v. CORBIN et al.

(Circuit Court of Appeals, Fourth Circuit. November 2, 1905.)

No. 603.

1. BANKRUPTCY—SALES OF PROPERTY—POWERS OF COURT.

    A court of bankruptcy has power to order the sale of any property of a bankrupt clear of incumbrances, and also, in its discretion, to appoint commissioners to make the sale; there being no requirement that such sales shall be made by the trustee.

    [Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 358.]

2. SAME—SETTING ASIDE SALE—GROUNDS.

    A sale of property of a bankrupt, made at a public auction, under an order of the court in which there was neither fraud nor mistake, should not be set aside merely on an offer by an unsuccessful bidder of an advanced price, amounting to no more than 4 per cent. above the sale price; but the purchaser in such case is entitled to a confirmation.

    [Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 378.]

3. SAME—REVIEW OF ORDER.

    An order of a district court in bankruptcy, setting aside a sale of property and directing a resale, is not reviewable on petition to superintend and revise until after the resale has been made and confirmed.

    [Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

Petition for Revision of the Proceedings of the District Court of the United States for the Northern District of West Virginia, at Clarksburg, in Bankruptcy.

B. M. Ambler and A. Leo Weil, for petitioner.
Hector M. Hitchings and Reese Blizzard, for respondents.

Before GOFF, Circuit Judge, and MORRIS and WADDILL, District Judges.

GOFF, Circuit Judge. In April, 1904, the Morgantown Tin Plate Company was duly adjudged a bankrupt. Application for an order of sale of the property of the bankrupt was made before the referee

141 F.—1

in bankruptcy, and was by him refused. A second application was made to him for such order, which was again refused. Thereupon, by proper proceedings, this action of the referee was reviewed by the District Court for the Northern District of West Virginia. That court, reversing the action of the referee, directed a sale of the bankrupt's property, consisting of a tin plate plant at Morgantown, W. Va., clear of all liens, incumbrances, and claims. To make such sale the court appointed two commissioners, and gave them specific instructions for their government relating to the sale of said property. This action of the court in directing said sale, and in not directing the trustee in bankruptcy to make it if ordered, is complained of here as error.

By virtue of the decree of the court below, the commissioners proceeded to sell said property, offering it at public auction on March 16, 1905, continuing the sale until the following day, when they "knocked it down" to one John G. Frazer at the price of $154,000. When this sale came before the District Court for confirmation, the petitioner, George C. Sturgiss, submitted to the court an offer of $160,000 for the property, together with a statement of the circumstances attending the public sale which had caused him to cease bidding, and to mistakenly allow the property to be knocked down to Frazer. Upon considering the petition of Sturgiss and his objections to the confirmation of the sale to Frazer, as also his offer of $160,-000, the court, Frazer not objecting, sustained the objections to the sale of March 16th, and, as all the parties who had bid on the property were present in court, in person or by attorney, and did not object, the court directed a resale to take place then and there at the bar of the court, the bidding to be started with the offer made by Sturgiss. Accordingly the property was again offered, and was sold in the presence of the court to Sturgiss for $200,200. The commissioners afterwards, on April 4, 1905, when the matter of the confirmation of this sale to Sturgiss was before the court, reported that since said sale they had received from M. G. Palliser, for whom one of the commissioners was counsel, a bid of $208,000 for the property, and at that time the said bidder and his counsel asked the court not to confirm the sale of March 30th, but to offer the property again at an upset bid of $208,000. This application for a resale was opposed by Sturgiss, who then offered to comply fully with the terms of his purchase, but the court overruled his objection, and directed a resale. The objection of Sturgiss to the decree of resale was noted in the order of the court, and due notice was then given by him of an appeal and petition for review by this court. The resale so directed was at once made, the bidding commencing at the offer of $208,000 made by Palliser, and being knocked down to the said John G. Frazer at the price of $220,000, after Sturgiss had bid as much as $219,900 for the same. This sale was subsequently, by a decree of the court below, duly confirmed, over the protest, objections, and exceptions of said Sturgiss. This action of the court in setting aside the sale of said property to Sturgiss, in directing a resale of it, and in afterwards confirming the sale to Frazer, is alleged in the petition for review to be error.

The order of the court below directing a sale of the property clear of all liens, claims, and incumbrances was, under the circumstances, a wise exercise of judicial discretion, being such action as the bankrupt act contemplates and provides for in those instances where the nature and location of the property makes it desirable, in the interest of the creditors, that the same be sold as soon as practicable. The act does not require that such sales shall be made by the trustee in bankruptcy, and while ordinarily it will likely be best and more convenient that such official conduct such sales, still there are doubtless many cases in bankruptcy where it is entirely proper for the court to exercise its undoubted right to designate the officer it wishes to conduct the sale it is authorizing; such designation being other than the trustee. There is nothing in the record before us indicating that the court below, in appointing its commissioners of sale, exercised its discretion improvidently, thereby militating against the interests of either the bankrupt or the creditors. This contention is without merit.

We come now to the consideration of the insistence that there was error in the decree directing that the sale to Sturgiss be set aside, and that the property be again offered at auction to the highest bidder. The sale to Sturgiss had been made under the provisions of the order of court directing the same, had been conducted in the presence of the court, and had been consummated after due notice to the bidders and the amount offered had been given to all concerned, and therefore, unless good cause was shown, the same should have been confirmed. The advance offer of $7,800 was, of itself under the circumstances attending the purchase by Sturgiss, not sufficient to warrant the setting aside of the sale. A sale made under a judicial decree will not, when no misunderstanding existed among the bidders, and when no fraud is shown, be set aside for mere inadequacy of price, unless such inadequacy is so gross as fairly to raise a presumption of fraud. The practice of opening biddings and of setting aside sales made during the progress of judicial proceedings should not be encouraged, as it is not conducive to the interests of litigants, and it tends to shake public confidence in the validity and finality of judicial sales, and to unduly prolong litigation. A purchaser at a judicial sale, who has complied with the terms thereof, or who shows his willingness and ability so to do, is not only entitled to the protection of the court, but as a party to the proceeding, made such by his purchase, is so situated as to be entitled to the court's decree of confirmation, in the absence of the inadequacy, fraud, or mistake before alluded to.

The Supreme Court of the United States, speaking through Mr. Justice Bradley, in Graffam v. Burgess, 117 U. S. 180, 191, 6 Sup. Ct. 686, 692, 29 L. Ed. 839, said:

"In this country Lord Eldon's views were adopted at an early day by the courts, and the rule has become almost universal that a sale will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience or unless there be additional circumstances against its fairness; being very much the rule that has always prevailed in England as to setting aside sales after the master's report had been confirmed."

Mr. Justice Brewer, speaking for the same court in Pewabic Mining Company v. Mason, 145 U. S. 349, 356, 12 Sup. Ct. 887, 888, 36 L. Ed. 732, said:

"The question in this case is whether the master's sale shall stand. It may be stated generally that there is a measure of discretion in a court of equity, both as to the manner and conditions of such a sale, as well as to ordering or refusing a resale. The chancellor will always make such provisions for notice and other conditions as will in his judgment best protect the rights of all interested, and make the sale most profitable to all; and after a sale has once been made, he will, certainly before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted. Yet the purpose of the law is that the sale shall be final; and to insure reliance upon such sales, and induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party prior thereto."

The property so sold to Sturgiss had previously been offered for sale, at which time the highest bid secured was $154,200. The bid by Sturgiss, at which it was, in the presence of the court, knocked down to him, was $200,200. The offer of an additional and higher bid, on which the court below acted when it refused to confirm the sale to Sturgiss, was for $208,000. The advance in the bid, it thus appears, was less than 4 per cent. on the sum at which it had been sold to Sturgiss. The acceptance of this belated bid was, we think, under the circumstances attending said sale, a mistake. This offer was made by a party interested in the proceeds of the sale, one who was thoroughly familiar with all the incidents connected with it, who was well advised as to the value of the property, and who had himself been an unsuccessful bidder during one of the times at which the property had been offered for sale. There is an entire absence of fraud; in fact no intimation of its existence is made. It is not shown that any mistake or misunderstanding existed among the bidders concerning the property itself, or the terms under which the sale was made. The additional offer was not of such a character as would demonstrate inadequacy of price, or justify a refusal to confirm. If a judicial sale has been fairly conducted, as was the sale we now consider, the rights of the purchaser should be protected, not only because it is his due, but also for the purpose of protecting such sales from the evil and chilling influences of instability and doubt.

The petitioner has followed the practice as established by the Supreme Court of Appeals of West Virginia relating to questions of this character. Under that practice, he was not entitled to an appeal to this court until after the resale ordered by the court below had been made and confirmed. With this practice we are in accord. Kable v. Mitchell et al., 9 W. Va. 492; Childs v. Hurd et al., 25 W. Va. 530; National Bank of Kingwood v. Jarvis et al., 26 W. Va. 785.

We conclude that the court below erred in refusing to confirm the sale of March 30, 1905, to George C. Sturgiss for the sum of $200,-200, and we hold that the order of resale made April 4, 1905, and all proceedings had thereunder, should be vacated and set aside. This cause is remanded, with directions that such further proceedings be had as will carry out the views herein expressed, and as will confirm the sale so made, as aforesaid, to said petitioner.