SHIPE v. CONSUMERS' SERVICE CO. et al.

TUDOR v. SCHINDLER.

Circuit Court of Appeals, Seventh Circuit.
November 28, 1928.

Rehearing Denied December 31, 1928.

No. 4054.

See, also, 28 F.(2d) 53.

Earl Barnes, of Indianapolis, Ind., for appellant.

Homer Elliott, of Indianapolis, Ind., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Appellee Schindler is the receiver in equity of Consumers Service Company, and, as such, under order of court, was carrying on the business of the company, operating a large number of oil filling stations.

On February 3, 1926, the court ordered the receiver to sell the company's assets at private sale, and a sale was made at $135,000, which the court refused to confirm, because not made in accordance with the statute. Another order of sale was made, under which one Fogarty bid $155,250, but, failing to make good his bid, a resale was ordered, and fixed for January 19, 1928, at which time the sale was postponed to February 2, and again postponed to March 2, on which date appellant Tudor bid $132,000. A memorandum was executed by him and the receiver, in effect stating that Tudor's offer contemplates the purchase of the property there listed; that he deposited $15,000 as a guaranty that he will complete the purchase; that the sale is made subject to the approval of the District Court; that on approval Tudor will pay the balance, and, if not approved, the deposit is to be returned. Abstracts of title of the real estate were delivered to Tudor for inspection, and he had them brought to date.

Within ten days thereafter appellee Frost proposed, if given opportunity, to bid $155,250 for the property, and as evidence of good faith placed in the hands of the receiver a certificate of deposit for $25,000. The judge of the court had been absent for a number of days, and on March 19 the receiver reported that he believed it to be to the best interest of the trust that Tudor's offer be not accepted, and asked that he be given further opportunity to sell. In the meantime, on March 16, Tudor filed a petition to have the sale to him confirmed, and objected to setting aside the sale and reopening the bid. The court heard the matter, and made an order directing that, if Frost or some other person should bid $155,250 or more for the property, the sale should be opened for further bids at not less than that price; but, if

there was not bid that sum or more, the court would confirm the sale to Tudor. On March 21 Frost made the bid accordingly, and the property was sold to him for that amount; whereupon the receiver was ordered to return to Tudor his deposit of $15,000, which was then in open court paid to and received by him. The sale to Frost was reported to the court, and on March 30 confirmed, the purchase price paid, and the property delivered.

Tudor maintains it was error for the court to refuse to accept his bid and to accept the bid of Frost.

There are numerous citations in the briefs, showing varying circumstances whereunder, in some cases, it has been held improper to ignore or set aside an accepted bid, in favor of one for a larger amount made after the sale; and other circumstances under which the court has sustained the course of accepting a subsequent larger bid.

■ Without discussion of the authorities, it may be stated that a court is not at liberty, out of caprice or favoritism, to set aside the successful bid. Generally speaking, if no good reason appears for refusing to confirm the first sale at which the property was struck off, such as chilling of bids or other misconduct, or gross inadequacy of price, the first sale should be approved.

The advance of $23,250 is of itself so considerable as to be quite persuasive of the desirability, and even the propriety, of accepting the larger bid; although it is questionable whether it may be said that this alone would indicate the gross inadequacy of Tudor's bid. No evidence appears as to the market value of the property. Its appraisal at the beginning of the receivership was $235,000.

In England there was once a rule—since abolished by statute—that if, after a judicial sale and before confirmation, as much as 10 per cent. advance over the price was offered, new bids would be called for. This is the rule in some of the states, and by statute in some judicial sales in Indiana. It does not, however, appear to be the rule of the federal courts. But when, as here, the advance offered before confirmation is nearly 20 per cent. of the price bid, we could not say that the court's discretion was abused in making it possible again to offer the property at this increased upset price.

■ But, in the state of the record, it is not necessary to decide this question. In the court's order of March 19, 1928, made on Tudor's petition to have the court confirm the sale to him, and the receiver's petition to have the sale to Tudor disapproved and for leave to solicit further bids, it is recited that Tudor's bid was "with full knowledge on information communicated to him by said receiver, that if before confirmation a bid of $155,250 were received for said property, said receiver would recommend that the sale to said Tudor be not affirmed"; and thereupon the court made its order for another sale.

From this it would appear that whatever acceptance there was of Tudor's bid was conditioned upon the fact that prior to confirmation no bid was made for the larger amount. The order for the sale at which Tudor bid not only made the sale subject to the court's confirmation, but empowered the receiver to reject any and all bids. While Tudor's bid was not rejected by the receiver, the recital in the order indicates that it was not unqualifiedly accepted by him. The one contingency in which it would not be accepted by him came to pass—the increased bid was received before confirmation.

■ For appellant it is contended that the record discloses no evidence whereon to base this finding by the court. The record discloses no evidence at all. There is no certificate of evidence, and in its absence we may not infer that there is no evidentiary basis for the court's finding.

■ Appellant maintains there is no benefit to the estate in the larger bid, since the excess over Tudor's $132,000 bid and the costs of that sale would be repaid to Fogarty to the amount of $19,500, which he had paid the receiver upon his bid—as appears from the allegations of Tudor's petition for confirmation. If Fogarty did make this payment on his bid, the question of whether he is entitled to be paid back any or all of it is not here involved. No order for such repayment appears in the record, and, of course, is not before us. Generally speaking, it is the duty of the receiver to realize for the property the largest possible amount, regardless of the ultimate disposition of the proceeds which the court may thereafter direct.

■ Error is alleged on the failure of the court to allow Tudor his expenses in connection with his bid. Suffice it to say, no order upon that subject appears in this record to have been requested or made; and that question is not before us.

The order appealed from is affirmed.