## In re YOST & COOK.

### NEW ALBANY TRUST CO. v. VOGT et al.
### No. 6617.

Circuit Court of Appeals, Sixth Circuit.
May 11, 1934.

Henry M. Johnson, of Louisville, Ky., for appellant.

Emile Steinfeld, of Louisville, Ky. (Isaac L. Steinfeld, Samuel S. Steinfeld, John L. Woodbury, and D. A. Sachs, Jr., all of Louisville, Ky., on the brief), for appellees.

Before HICKS and SIMONS, Circuit Judges, and HAHN, District Judge.

HICKS, Circuit Judge.

Yost & Cook, a corporation operating a garage in Louisville, was, on March 5, 1932, adjudicated a bankrupt. This appeal seeks to reverse an order of the District Court approving the action of the referee in confirming the sale of a leasehold owned by the bankrupt.

Adam Vogt and his wife, Lulie W. Vogt, hereinafter referred to as the Vogts, owned a lot on Third street, Louisville, upon which were certain old buildings, which they leased for a term of ninety-nine years, beginning March 1, 1920, to Al. F. Yost and W. G. Cook. The lessees agreed to remove these buildings and to erect a new one in which they were to conduct a garage business. To provide the necessary money, they executed a mortgage upon their leasehold to the New Albany Trust Company, trustee, to secure an issue of $105,000 of bonds which were sold to the general public.

Upon the completion of the garage, about March 15, 1924, the partners incorporated the business under the name and style of Yost & Cook, and thereafter the corporation operated the garage until it went into bankruptcy, at which time it was in arrears in the

payment of rent and taxes. The Vogts filed in the bankruptcy proceeding their secured claim in the nature of a petition seeking the termination of the lease according to the terms of one of its provisions and the recovery of possession of the premises pending the enforcement of their liens upon the leasehold and the improvements to secure rents, taxes, etc., and the sum of $20,000 which the lessees had agreed to pay at the termination of the lease as the value of the buildings they had removed.

The petition further sought an order requiring the New Albany Trust Company, trustee for bondholders, and all other persons claiming an interest in the leasehold or improvements thereon, to show cause why the lease should not be terminated as prayed for and why the claim of petitioners should not be adjudged prior and superior to all other claims and liens thereon and why the improvements upon the leasehold should not be sold, as provided under the terms of the lease, to satisfy petitioners' claim. The petition also prayed for relief generally.

When this petition was tendered, the trustee in bankruptcy, Morris W. Jones, stated in open court that he joined in its prayer, but upon the same date, June 7, 1932, he filed a petition as such trustee, seeking a sale of the interest of the bankrupt in the leasehold.

The show cause order was granted, and appellant responded by filing an answer and counterclaim in which it alleged that the Vogts and Yost & Cook were really joint owners of the property, and that it, as trustee for the bondholders, should have a lien upon the entire property, consisting of both land and improvements, or, in any event, that it should have a lien upon the improvements which the money of the bondholders had paid for. Appellant filed the mortgage executed by Yost & Cook as an exhibit to its counterclaim.

The Vogts filed an answer to the counterclaim and denied all of its material averments.

A. L. Davis and D. Judah, bondholders, responded to the show cause order by objecting to the declaration of a lien on the leasehold to secure to the Vogts the payment of the $20,000 mentioned, and asking for a sale of the property on terms which would permit the purchaser to assume the lease.

Upon this state of the record the referee held that the sole and only interest which the bankrupt had in the property was that of a leasehold which passed to the trustee in bankruptcy, but further held that this interest was subject to liens in the following order of priority: (1) For unpaid taxes; (2) in favor of the Vogts (a) in the sum of $20,000 and (b) for rent due and to become due; and (3) by mortgage executed to appellant trustee. The referee thereupon directed the trustee in bankruptcy to sell the leasehold free of all liens except (1) that for $20,000 in favor of the Vogts; (2) that for rents to become due under the lease after the date of the confirmation of the sale; (3) that for taxes for the year 1933 and subsequent years.

Appellant filed a petition to review the referee's order upon two grounds: (1) That he had erred in failing to allow priority to appellant's claim as trustee for bondholders; and (2) that he had failed to enter a judgment declaratory of appellant's rights.

Upon review, the judge confirmed the order of the referee, and there was no appeal from the ruling.

Upon this assumption the referee revived the order of sale, and the trustee in bankruptcy, on March 28, 1933, sold the leasehold to the Vogts for $5,000 cash. Appellant thereupon objected to the sale and sought to have it set aside upon the ground that the terms upon which it was ordered violated the rights of the bondholders and was inequitable and unjust to them.

The referee overruled this objection and confirmed the sale. Whereupon appellant by petition sought a review and for the first time advanced the theory that, instead of selling the lease, the court should have sold the entire property, including the lot and the improvements, dividing the proceeds between the Vogts and the bankrupt estate in the ratio of the value of the lot to the value of the improvements. Appellant's claim is based upon a provision found in the last paragraph of the lease, the relevant portion of which is copied in the margin.[1] The court overruled

---

[1] "In the event that the lessors, their heirs, devisees, legatees, personal representatives or assigns fail, at the expiration of this lease, to agree with the lessees, their successors or assigns, as to the value and disposition to be made of the buildings then standing upon the leased premises, the said lessors, their heirs, devisees, legatees, personal representatives or assigns, and the lessees, their successors and assigns shall each of them select one competent and disinterested appraiser, who shall together proceed to value the said improvements upon said premises, and the said land, separately. If the said two appraisers fail to agree, they shall select a competent and

appellant's contention, approved the order confirming the sale, and dismissed the petition to review; hence this appeal.

We find no reversible error.

 To set aside the sale and then sell the lot with the improvements and divide the proceeds would totally disregard the order of March 1st which had fixed the rights and priorities of the parties and the sale procedure. But, assuming that the court could override the order of March 1st, it does not follow that the sale formula put forward by appellant should have been adopted. The bankrupt had never owned the lot, and it was not therefore subject to sale.

We have examined the clause in the lease relied upon by appellant in connection with the entire instrument, and we regard it as nothing more than a basis for settlement between the lessor and the lessee upon the expiration of the lease by the effluxion of time, and not as limiting the court in the procedure to be followed in the sale of bankruptcy assets.

Appellant's real grievance is that the sale left nothing for bondholders. This alone is not sufficient ground for setting it aside. Three months elapsed before it was confirmed, no one offered a higher bid, and there is no indication that the property would bring more if resold. It cannot be denied that the sale price was low, as compared with the supposed value of the lease when the mortgage was executed in 1924, but the court was confronted with the distressed condition of the market in 1933, at which time the building had an appraised value of only $55,-000. A judicial sale will not be set aside for inadequacy of price alone unless the inadequacy is such as to shock the conscience of the court. See Graffam v. Burgess, 117 U. S. 180, 191, 6 S. Ct. 686, 29 L. Ed. 839; Magann v. Segal, 92 F. 252, 259 (C. C. A. 6); Sturgiss v. Corbin, 141 F. 1, 4 (C. C. A. 4); In re Burr Mfg. & Supply Co., 217 F. 16, 19 (C. C. A. 2). We cannot say that, under the circumstances, the sale for $5,000 cash of a lease burdened with a $20,000 lien and additional liens for rents and taxes should be set aside. The District Judge had a wide discretion in the matter (Pewabic Min. Co. v. Mason, 145 U. S. 349, 356, 12 S. Ct. 887, 36 L. Ed. 732), and further, aside from the personal obligation of Yost & Cook, the only security the bondholders ever had was a mortgage upon the lease, not upon the land.

Appellant further complains that, although the trustee in bankruptcy was ordered to advertise the sale in a Louisville newspaper, no such advertisement was actually made. This contention was not presented to the referee nor to the lower court, and is not found in the assignments of error, and is therefore not reviewable here. Britton v. Western Iowa Co., 9 F.(2d) 488, 491, 45 A. L. R. 711 (C. C. A. 8); In re Community Finance Co., 295 F. 773, 777 (C. C. A. 4).

The order appealed from is affirmed.

---

disinterested party to act as umpire, and the three shall proceed to appraise the value of said building or buildings and said land, and the conclusion of any two of them shall be binding upon the parties. The lessors, their heirs, devisees, legatees, personal representatives or assigns shall have the right to take said buildings at the appraised value. In the event that they elect not to take said buildings at the appraised value, the lessees, their successors and assigns shall have the right to take said land upon which said buildings are located at the appraised value thereof. In the event that the lessees elect not to take said land, then the land and improvements thereon shall be sold at public auction, and the proceeds thereof divided between the lessors, their heirs, legatees, devisees, personal representatives or assigns, and the lessees, their successors or assigns, in the ratio of the appraised value of the land to the appraised value of the improvements thereon."