## AMERICAN TRADING & PRODUCTION CORPORATION v. CONNOR et al.
### No. 4577.

Circuit Court of Appeals, Fourth Circuit.

Feb. 24, 1940.

John W. Cable, III, and Carlyle Barton, both of Baltimore, Md. (Karl F. Steinmann, of Baltimore, Md., on the brief), for appellant.

Hunter H. Moss and G. Ridgely Sappington, both of Baltimore, Md. (Venable, Baetjer & Howard, of Baltimore, Md., Felix C. Lourie, of New York City, and J. Cookman Boyd, J. Cookman Boyd, Jr., and D. Heyward Hamilton, Jr., all of Baltimore, Md., on the brief), for appellees.

Before SOPER and DOBIE, Circuit Judges, and WEBB, District Judge.

SOPER, Circuit Judge.

This appeal is taken from a decree refusing to confirm a public sale of real estate conducted by a special master in a receivership proceeding, and confirming a subsequent sale of the same property conducted by the District Judge in open court. The property belonged to the Interocean Oil Company which had mortgaged it to secure the payment of bonded indebtedness in the sum of $1,850,000. It consists of 100 acres of land fronting 1,800 feet on Curtis Bay, Baltimore, and includes a half interest in a pier 20 feet wide and 500 feet long, in good condition, located in 28 feet of water. It is served by the Pennsylvania and Western Maryland Railroads and is desirable as an oil storage and distributing plant.

In 1932, the mortgagor being in default, the trustee named in the mortgage filed a bill to foreclose in the District Court and a receiver to hold the property was appointed. Business conditions were such

that it could not be sold to advantage at public auction, and all efforts to consummate a desirable private sale proved futile. Finally in 1937, after appropriate proceedings, the court passed an order appointing the receiver as special master to sell the property at public auction on January 10, 1938, and fixed an upset price of $250,000. Adequate advertisement and notice of the auction were given; but the effort proved fruitless. Only $51,000 was bid and it was necessary to adjourn the sale pending the further order of the court.

After a further hearing and order, another auction sale, without upset price, was held on June 5, 1939. Again the Special Master gave full advertisement and notice, and specified therein that the court reserved "the right to reject any and all bids". At the sale the property was sold to the American Trading and Production Corporation, appellant herein, for $100,000 subject to confirmation by the court. Objections to the confirmation of the sale were filed on the ground of grossly inadequate price. A hearing was held in July, at which testimony was taken and an order was signed fixing an adjourned hearing on September 14, 1939, and giving notice that if the sale should not be then ratified, the court would consider proposals for the final disposition of the receivership proceeding, provided that the proposals should be submitted on or before September 1, 1939. Amongst the proposals filed was one which opposed the ratification of the sale, and indicated that the proposer would submit an offer to the court to purchase the property for $155,000.

On September 14, 1939, a large majority of the bondholders objected to the ratification of the sale. The Richfield Oil Corporation of New York filed an offer to purchase the property for $155,000. Testimony on behalf of the receiver indicated that the public sale had been fully advertised and fairly conducted in conformity with the rules and decree of the court, but that the value of the property was from $225,000 to $250,000. No testimony as to the value of the property was offered by the appellant. On September 16, 1939, the court filed an opinion (Baltimore Trust Co. v. Interocean Oil Co., D.C., 29 F.Supp. 269), holding that the public sale should not be ratified because the highest bid of $100,000 was grossly inadequate; and that the bidding should be reopened to consider the Richfield offer of $155,000 and to give

an opportunity to the appellant and all others to submit other bids for the property. Accordingly on September 22, after due notice, the court refused to ratify the public sale and called for bids from persons in the court room. During the bidding the President of the appellant company, acting in his individual capacity, offered $221,000 for the property; and it was finally sold to the Richfield Corporation as the highest bidder for the sum of $230,000, whereupon the court signed the decree appealed from.

There can be no doubt that these facts warranted the finding of the District Judge that the price bid for the property at the public auction was grossly inadequate, and that an injustice to creditors would be done if the sale to the appellant should be ratified and the offer of the Richfield Oil Corporation of more than double the price should be rejected. The most recent statement by this court of the rule generally applicable under such circumstances is found in Speers Sand & Clay Works v. American Trust Co., 4 Cir., 52 F.2d 831, 835, certiorari denied 286 U.S. 548, 52 S.Ct. 500, 76 L.Ed. 1284, as follows: "The rule is well settled that 'a judicial sale regularly made in the manner prescribed by law, upon due notice, and without fraud, unfairness, surprise or mistake, will not generally be set aside or refused confirmation on account of mere inadequacy of price, however great, unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud, unfairness, or mistake.' 16 R.C.L. 95; Pewabic Mining Co. v. Mason, 145 U.S. 349, 12 S.Ct. 887, 36 L.Ed. 732; Everett v. Forst, 50 App.D.C. 215, 269 F. 867, 15 A.L.R. 789. And it is equally well settled that whether the price bid is grossly inadequate and whether and upon what grounds confirmation should be refused are matters within the judgment and discretion of the tribunal ordering the sale, with the exercise of which an appellate tribunal will not interfere except in cases of abuse. Jacobson v. Larkey (C.C.A. 3d) 245 F. 538, L.R.A.1918C, 1176." This rule would require an affirmance of the judgment. The appellant contends, however, that the pending case relates to a substantive right under the law of Maryland, and that under Erie R. Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, we are bound to follow the decisions of the highest court of the State. We do not find any substantial difference in the law enunciated by the Court of Appeals of Maryland. Its

opinion in Shirk v. Soper, 144 Md. 269, 275, 276, 124 A. 911, 914, quotes its oft repeated language "that mere inadequacy of price, standing alone, is not sufficient to vacate a sale, unless it is so gross and inordinate as to indicate some mistake or unfairness in the sale, for which the purchaser is responsible, or misconduct or fraud on the part of the trustee making the sale". From this statement the appellant infers that although gross inadequacy of purchase price may be sufficient in itself to justify the setting aside of a public sale conducted by an officer of the court, it is of no avail if the evidence shows, as it does in the pending case, that no impropriety or error actually attended the sale. In support of this contention reference is made to Hunter v. Highland Co., 123 Md. 644, 91 A. 697, where the court considered exceptions to a public sale based on the charge of gross inadequacy of purchase price, and, after stating the rule, pointed out that there was nothing to show mistake or unfairness in the sale on the part of the purchaser, or misconduct or fraud on the part of the person conducting the sale. This decision, however, does not sustain the appellant's contention because the court also found that the proof did not show such gross inadequacy of price as to indicate misconduct, fraud or unfairness on the part of those connected with the sale of the land, and consequently no warrant could be found for disturbing the sale on that ground.

In Shirk v. Soper, supra, it was suggested (144 Md. page 276, 124 A. page 914,) that inadequacy of price may be "so glaring as to afford intrinsic evidence of misconduct, unfairness, mistake, or fraud on the part of the trustees in making the sale". The same thought is found in the statement of the court in Waters v. Prettyman, 165 Md. 70, 74, 166 A. 431, 432, that "inadequacy of price, standing alone, is no ground for the refusal to ratify a mortgage sale, unless the price be so grossly inadequate as to, in and by itself, indicate mistake, fraud, or unfairness in the conduct of the sale". See also, Righter v. Clayton, 173 Md. 138, 144, 194 A. 819, 821, where the court said: "The rule has been definitely stated and adhered to through numerous decisions that a sale will not be set aside because of mere inadequacy of price, unless the price be so unreasonable as to indicate a lack of judgment and discretion or misconduct on the part of the trustee in making the sale. Mere differences of opinion do not justify the inter-

position of a court of equity in refusing to ratify a judicial sale made in good faith and without misconduct on the part of those interested or having in charge the sale of the property. Gross inadequacy of price, collusion, fraud, and mistake are all matters upon which affirmative relief of a court of equity may be invoked for the benefit of those having an interest in the property sold."

This statement of the rule is approved in the most recent decision of the court on the point, Ten Hills Co. v. Ten Hills Corp., 176 Md. 444, 5 A.2d 830, 832, which contains the following significant passage—viz.: "Mere inadequacy of price unless it be so glaring and palpable as to indicate fraud or unfairness, or suggest that the trustee lacked the judgment and skill necessary to any adequate administration of the duties of his office, Righter v. Clayton, 173 Md. 138, 144, 194 A. 819, Harvey v. Savings Bank, 170 Md. 295, 297, 184 A. 228, will not be accepted as sufficient ground to set aside a sale fairly made."

It seems clear from these repeated statements that while the language used by the State Court differs in form from that used by the Federal Court the principle is the same, and that in Maryland as elsewhere, inadequacy of the price secured is enough of itself without more to warrant the setting aside of a public judicial sale if the inadequacy is so gross as to shock the conscience and raise a presumption of fraud, unfairness or mistake. Especially is this true when a resale may reasonably be expected to result in a substantially higher price. Thus it was said in Busey v. Perkins, 168 Md. 453, 454, 457, 178 A. 254, that courts are reluctant to order a resale unless there is some assurance that a better price will be secured; and in Weinstein v. Boyd, 136 Md. 227, page 234, 110 A. 506, page 508, the court pointed out the different principles which govern private as distinguished from public sales, and said: "In the one case, slight inadequacy and reasonable expectation of a better price are sometimes sufficient to justify the setting aside of sales where the approval of a court is necessary, or where it is invoked; while in the other, the inadequacy must be gross, and the prospect of a better price practically demonstrable, or the circumstances such as to indicate the absence of fair competition." In the pending case, as we have seen, the court set the auction sale aside on the basis of a firm

offer of $155,000 for the property, and upon testimony that it was worth from $225,000 to $250,000; and by the resale the sum of $230,000 was actually secured.

[3] The appellant also attacked as improper the proceedings subsequent to the filing of the opinion in the District Court wherein additional bids were filed, and the property was finally sold to the Richfield Oil Corporation as the highest bidder. We need not consider this additional point, because the appellant has no standing in this case except as the highest bidder at the auction sale, which was properly set aside; and no one else objects.

The decree of the District Court is therefore affirmed.