REID v. KING et al.

In re PRICE.

No. 5519.

Circuit Court of Appeals, Fourth Circuit.

Nov. 11, 1946.

Spotswood W. Robinson, III, and Oliver W. Hill, both of Richmond, Va. (Hill, Martin & Robinson, of Richmond, Va., on the brief), for appellant.

Ralph T. Catterall, of Richmond, Va. (James Mullen and Williams, Mullen & Hazelgrove, all of Richmond, Va., on the brief), for appellee Trustee in Bankruptcy.

Robert G. Cabell, of Richmond, Va. (Tucker, Mays, Cabell & Moore, all of Richmond, Va., on the brief), for appellee Peter King.

James T. Carter, of Richmond, Va., for appellee Southern Aid Soc. of Virginia, Inc.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The highest bidder at a sale of shares of stock by the trustee in bankruptcy appealed from an order of the court whereby confirmation of the sale was refused and the sale of the stock to another purchaser who subsequently offered a substantially higher price was ratified and confirmed. There is involved the question whether the court had the right to exercise its discretion in the premises notwithstanding the fact that the price originally offered was found not to be grossly inadequate.

On October 7, 1942, the court directed the trustee in bankruptcy to sell at private or public sale certain assets of the bankrupt estate, subject to confirmation by the court. For reasons not here material, the sale was delayed until December, 1945, when the trustee, by public advertisement and by letters, solicited sealed bids on certain property including 2,485 shares of the common stock of the Southern Aid Society of Virginia of the par value of $10 per share and 91 shares of the Consolidated Bank and Trust Company of the par value of $10 per share. The public was sufficiently informed that bids would be received until 2 P. M. on December 17, 1945, when all bids would be opened and the highest would be accepted by the trustee subject to confirmation by the court which might reject all offers. The only bids submitted were the bid of Leon A. Reid, the appellant, of $11.10 per share for the stock of the Southern Aid Society and $10.55 for the shares of the Consolidated Bank and Trust Company, in the aggregate sum of $28,543.55, and also the bid of T. J. Roberts, one of the appellees, of $10.55 per share for the stock of the Southern Aid Society.

The shares described had been appraised in the bankruptcy proceeding at $10 per share on November 29, 1941.

On December 22, 1945, before the trustee filed his report of the sale, Peter King, one of the appellees who had full knowledge of the prior proceeding but had not availed himself of the opportunity to submit a bid, offered to buy all of the stock at the price of $15 per share, or an aggregate of $38,640, an increase of $10,096.45 or more than 35% over the highest bid originally submitted.

These matters were reported on January 2, 1946, to the referee, who ordered all bidders to appear before him to show cause why the offers should be accepted, and accordingly the bidders appeared and a hearing was had. On January 22, 1946, the referee filed his conclusions and ordered that action on the offer of Peter King be deferred to January 29, 1946, on which date the several bidders were invited to file amended bids in excess of $15 per share. No such bids were received, and accordingly the referee ordered that the bid of King of $15 per share be accepted. On review this order was affirmed by the District Judge.

In the opinion of the referee, which was accepted by the District Judge, it was found that the bid originally offered was not grossly inadequate; but since it was subject to confirmation by the court and had not been accepted before the higher bid was received, the referee held that the case was not subject to the rules applicable to completed sales; and that it lay within the discretion of the court to reject the original

bid, since it had become clear that it was inadequate in amount and since a substantially higher price could be secured at a resale. The referee pointed out that the appraisement of $10 per share for the stock had been made four years before the sale and could no longer be regarded as reliable evidence of the value of the stock since in the meantime conditions had substantially changed.

We are urged to reject these conclusions on the ground that confirmation of a judicial sale, even in bankruptcy, should not be refused for inadequacy of price, unless the price is so grossly inadequate as to raise a presumption of fraud or shock the conscience, or unless the inadequacy is great and is accompanied by circumstances of unfairness on the part of the party benefited. Authorities in this circuit and elsewhere are cited in support of this rule: Sturgiss v. Corbin, 4 Cir., 141 F. 1 (denial of confirmation on appeal reversed); Jacobsohn v. Larkey, 3 Cir., 245 F. 538, L.R.A.1918C, 1176 (denial of confirmation on appeal affirmed); see also Speers Sand & Clay Works v. American Trust Co., 4 Cir., 52 F.2d 831, 835; In re Yost & Cook, 6 Cir., 70 F.2d 614; American Trading & Production Corp. v. Connor, 4 Cir., 109 F.2d 871; 6 Remington on Bankruptcy, 4th ed., § 2555.

It should be noted, however, that the phrase "gross inadequacy" is of early origin and derives its authority from the procedure developed by the courts to govern execution sales and judicial sales so as to protect the interests of the parties, and especially to give stability to the sales and to encourage purchasers to bid with confidence. Kleber's Void Judicial and Execution Sales § 355. The rule has been taken over by courts of bankruptcy under a statute whose prime purpose is to dispose of the assets of the bankrupt at the highest prices obtainable in the interest of the creditors; and not infrequently the conflict between this purpose and the need to inspire confidence in sales under the supervision of the court has given rise to uncertainties which are reflected in the decisions. The courts have not always borne in mind the important distinction between setting aside a completed sale and refusing confirmation of a sale which has been made subject to the approval of the court, Morrison v. Burnette, 8 Cir., 154 F. 617, 624; In re Burr Mfg. & Supply Co., 2 Cir., 217 F. 16, 19; and the importance of a substantial offer at an advanced price after a sale has taken place, but before it has been confirmed, has not always been recognized. For example, in Sturgiss v. Corbin, 4 Cir., 141 F. 1, the alleged inadequacy was so slight that the court would have been justified in confirming the sale without reference to the gross inadequacy rule.

The result is that some inconsistency is found in the statement of the rule in reported cases, and the courts in notable instances have departed from strict adherence to the rule and have refused confirmation in the interests of the creditors, even in the absence of unfairness or impropriety in the conduct of the sale, when the trustee has received a reliable and substantial advance bid after the sale has been held. In these cases the courts have accepted such an advance bid as sufficient without the accompaniment of those "slight circumstances of unfairness" which in the earlier cases, such as Morrison v. Burnette and In re Burr Mfg. & Supply Co., supra, were thought necessary to justify a rejection of confirmation. The matter is well summed up in the following passage from 4 Collier on Bankruptcy, 14th ed., § 70.98 at pp. 1584–1586, as follows:

"But the language of the courts is none too precise as to the degree of price inadequacy required to warrant denial of confirmation on the one hand, and setting aside, on the other. 'Mere inadequacy', an expression that usually covers cases of a rather slight difference between the highest auction bid and either a supervening bid, or the appraised value, or an alleged fair market price, will not suffice even to warrant a refusal of confirmation, much less the setting aside of a confirmed sale. Nor is the fact that after a satisfaction of prior liens nothing will be left even for certain mortgagees a sufficient indication of inadequacy of price to warrant either a denial of confirmation, or the setting aside of a sale. Generally speaking, however, confirmation may be denied on the basis of inadequacy of price where there is a substantial disparity be-

tween the bid or contemplated sales price and the appraised or fair market value, and (1) where there is a reliable degree of probability that a substantially better price will be secured by a resale or (2) some element, however slight, of unfairness on the part of the purchaser. This represents a compromise between the policy of strengthening public confidence in the stability of judicial sales and that of strengthening the court's hands in its efforts to secure the best possible result for the benefit of the estate under its protection. But when the court is faced with a request to set aside a sale and to undo what has already been done with the court's approval, the balance turns in favor of the policy of strengthening public confidence in judicial sales and executed contracts, and, as we have seen, the sale will be set aside only if the grounds alleged are sufficient to invalidate a similar private transaction on equitable grounds."

See Bryant v. Charles L. Stockhausen, Inc., 4 Cir., 271 F. 921; In re Wolke Lead Batteries Co., 6 Cir., 294 F. 509; Coulter v. Blieden, 8 Cir., 104 F.2d 29; In re Klein's Rapid Shoe Repair Co., 2 Cir., 54 F.2d 495; In re Williams, 4 Cir., 197 F. 1. Cf. Baltimore Trust Co. v. Interocean Oil Co., D.C. Md., 29 F.Supp. 269, 271, 273.

■■■ We are in accord with this statement and we think it is in harmony with the explicit provision of the Bankruptcy Act that sales should be made subject to the approval of the court. Section 70, sub. f, of the statute, 11 U.S.C.A. § 110, sub. f, provides that all real and personal property of the bankrupt estate shall, when practicable, be sold subject to the approval of the court; and that it shall not be sold otherwise than subject to the approval of the court for less than 75 per cent of its appraised value. Every bankruptcy sale, therefore, is subject to the court's approval whenever the court finds that it might reasonably have been held subject to such approval. In re Shea, 1 Cir., 126 F. 153, 156. On this account it is well established that in a sale in bankruptcy the court is the real seller and the trustee is its agent to obtain the highest possible price; and as the sale is not consummated until confirmed by the court, bids may be refused on lesser grounds than in sales which have been finally consummated. In re Wolke Lead Batteries Co., 6 Cir., 294 F. 509; In re Burr Mfg. & Supply Co., supra.

■■■ The case before us does not relate to the setting aside of a completed sale but to the confirmation of a sale made subject to the court's approval. The concrete problem is whether or not the bidding should be reopened to let in a substantially higher bid. We see no reason why the court in this situation should not be permitted to exercise the authority granted it by the express terms of the statute to approve or disapprove the lower bid; or why the review of its decision on the point should not be limited by the rule which commits such decisions to the sound discretion of the court. In re Hagerstown Silk Co., 4 Cir., 69 F.2d 790; In re Wolke Lead Batteries Co., 6 Cir., 294 F. 509; In re Shea, 1 Cir., 126 F. 153. This course, in our judgment, will produce more satisfactory results than a strict adherence to a verbal rule of thumb devised long ago to govern sales in another field.

It has been demonstrated by the firm offer of $38,640 for the stock by the appellee King in the pending case that the highest bid of $28,543.55 offered at the sale was substantially inadequate and below the fair market value of the property. The court was therefore justified in accepting the new offer as better evidence of the true value of the property than the appraisal of $25,760 which was made in 1941, especially in view of the great changes in business conditions consequent upon the intervening war. We do not overlook the important fact that King failed to exercise the opportunity to bid when the stock was first offered, but there was evidence, based on his actions during the proceedings in bankruptcy, tending to show that he was moved by no effort to obtain an unfair advantage but was sincerely desirous of securing the highest price for the securities for the benefit of the creditors. There is no reason to believe that the discretion of the court was not wisely exercised in the pending case and its judgment will be

Affirmed.