### In re STANLEY ENGINEERING CORPORATION.

#### No. 9420.

Circuit Court of Appeals, Third Circuit.

Argued June 5, 1947.

Reargued Oct. 17, 1947.

Decided Nov. 6, 1947.

Writ of Certiorari Denied Jan. 5, 1948.

See 68 S.Ct. 351.

O'CONNELL and McLAUGHLIN, Circuit Judges, dissenting.

Abraham E. Freedman, of Philadelphia, Pa., for appellant.

John Edward Sheridan and David Rosen, both of Philadelphia, for trustee.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN, O'CONNELL and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Is it an abuse of discretion for a bankruptcy court to fail to confirm a judicial sale, which was properly conducted and which produced a bid substantially in excess of the appraised value of the property, in the absence of unfairness, fraud or mistake, or gross inadequacy of price, and where the only apparent reason for the court's action is its desire to obtain the benefit of a higher bid·made at the confirmation hearing by another party?

That is the primary issue presented by this appeal. A secondary question presented is whether it is reversible error for the bankruptcy court to award the property to another party making a higher bid at the confirmation hearing fixed to take action on the public sale.

The questions posed arise out of an appeal from the action of the bankruptcy court in refusing to confirm a sale of real estate to the high bidder at a public sale and in accepting a higher bid made by a second party at the confirmation hearing. The facts may be briefly stated as follows:

On April 8, 1947, the bankruptcy court authorized the sale of the assets of the Stanley Engineering Corporation in a bankruptcy proceeding.[1] Three disinterested appraisers appointed by the court valued the realty assets of the corporation at $50,000. The real estate was assessed at $45,000 by the City of Philadelphia for the year 1947. Pursuant to the court order the realty was offered for sale at public auction May 7, 1947. The public sale was "well-advertised"[2] and "well-attended". There was spirited competitive bidding starting at $35,000 or $36,000, with the appellant, Morris Galman, making the highest bid, of $57,250. The bid was 14½% in excess of the appraised value of the property. Following the acceptance of the Galman bid by the auctioneer he entered into a contract of sale with the agents of the trustees and submitted a certified check for 15% of the purchase price. On the following day counsel for the trustees presented a petition to the bankruptcy court to confirm the sale. It was then that counsel for the Gaby Company appeared and offered $63,250 for the realty, approximately 10% higher than the appellant's bid.

At this point the court below inquired of the parties present as to the adequacy and scope of the advertising of the sale, the manner in which it was conducted, the nature of the bidding, the appraisement, etc.; and the facts previously related were elicited. Counsel for the Gaby Company stated in discussing the sale, "There was a pretty big crowd there. I never saw so many turn out for a sale. * * * In my opinion there was nothing at all irregular. The sale was one of the best conducted sales that I have ever seen in my experience at the bar." Counsel for the trustees stated that the sale was a "good one" and that the sale was extensively advertised, properly conducted and that there was no fraud or collusion "or anything of that kind". He vigorously urged the court to confirm the public sale and to award the property to Galman, the high bidder.

After presentation of these facts the

---

[1] Under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 ff.

[2] The sale was advertised once a week for five weeks by display advertisements in the Philadelphia Inquirer and in the New York Times. Catalogues were distributed to "all real estate brokers in and about Philadelphia and New York" and "to all kinds of people". The cost of advertising, cataloguing and mailing was in excess of $600.

Court announced that the submission of the higher bid by the Gaby Company raised "a grave question of policy" requiring further deliberation. The hearing was then adjourned.

On May 12th a second hearing was had. At that time the court, referring to the fact that the $63,250 bid at the confirmation hearing was $6,000 in excess of the bid at the public sale, stated "I am not going to take the responsibility of refusing $6,000 to these creditors. * * *" The court announced that it contemplated directing a new public sale contingent upon the filing of a bond by the Gaby Company to insure the renewal of its bid at such public sale, plus expenses of advertising, auctioneer commissions, and other costs. The court then adjourned the hearing with the statement that it would announce its final decision, affirming the Galman bid or directing a new sale, the following day.

A third and final hearing was had on May 13th. At that time the court stated that while it subscribed to cited decisions that public sales should be confirmed where they were properly conducted in the absence of unfairness, fraud, or mistake, or gross inadequacy of price, "What makes this case exceptional * * * is the fact it (the Gaby bid) is 10% above (the Galman bid)."

The court indicated that in view of the circumstances it would enter an order directing a new public sale contingent upon the Gaby Company's filing the bond previously discussed. At this point, counsel for the trustees urged the court to avoid the delay of another public sale and to conclude the matter after giving Galman the opportunity to make a further bid. The court acceded to this suggestion. At the afternoon session the court asked counsel for the Gaby Company whether he desired to bid. In response he made a bid of $63,250. Counsel for Galman then stated that he would match that bid, whereupon counsel for Gaby increased his bid to $67,250. The court thereupon inquired of counsel for Galman whether he desired to make any further bid and when advised that he would not do so the Gaby bid of $67,250 was accepted by the court.

The court then made a statement asserting that its action in refusing to confirm the public sale and its award of the property to the Gaby Company was due to the fact that the latter bid was almost 20% higher than the public sale bid, and that it was incumbent upon the court to obtain the higher price in the interest of the creditors.

This summary makes it crystal clear that the bankruptcy court's rejection of the Galman bid at the public sale and its acceptance of the higher Gaby bid at the confirmation hearings was solely due to the court's desire to obtain for the benefit of the creditors, the $10,000 difference between the two bids.[3]

The court made no finding of inadequacy of price, gross or otherwise, in the Galman bid nor did it make any finding that there was unfairness, fraud or mistake in the conduct of the public sale. There was not even a suggestion of inadequacy of price anywhere in the proceedings below.

The Bankruptcy Act, as amended by Section 1, 52 Stat. 879 (1938), 11 U.S.C.A. § 110, sub. f, provides as follows: "* * * Real and personal property shall, when practicable, be sold subject to the approval of the court. It shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value. * * *"

While the extent of the power of the bankruptcy court, in denying confirmation or setting aside judicial sales, is not spelled out in the statute, the extent of such power has been spelled out in numerous decisions.

These decisions establish:

That judicial sales, made upon due notice and in accordance with law, will be confirmed unless (a) there was fraud, unfairness or mistake in the conduct of the sale; or (b) the price brought at the sale was so grossly inadequate as to shock the conscience of the court and raise a presumption of fraud, unfairness or mistake. Mere inadequacy of price is not a sufficient ground for setting aside a judicial sale where there was no unfairness in the conduct of the sale. In determining whether gross inadequacy exists the bankruptcy

---

3 The Gaby bid was 17½% higher than the Galman bid and not 20% as stated by the bankruptcy court.

court must take into consideration appraisement of the property as a guide in the exercise of its discretion in accordance with the intendment of the statute cited. *Where the bankruptcy court fails to confirm a judicial sale in the absence of unfairness, fraud or mistake or gross inadequacy of price, its action will be reversed on the ground of abuse of its legal discretion.*

We subscribed to the principles enumerated in Jacobsohn v. Larkey, 3 Cir., 1917, 245 F. 538, page 541, L.R.A.1918C, 1176. In doing so we stated as follows:

"Judicial sales are an indispensable part of the machinery employed in administering bankrupt estates. *Public policy requires stability in such sales.* The Ruby, D.C., 38 F. 622; In re Burr [Mfg. & Supply Co., 2 Cir.] 217 F. 16, 19, 133 C.C.A. 126. *To induce bidding at such sales and reliance upon them, the purpose of the law is that they shall be final.* Pewabic Mining Co. v. Mason, 145 U.S. 349, 356, 12 S.Ct. 887, 36 L.Ed. 732; *they are not to be disturbed except for substantial reasons.*

"*After much experience in scrutinizing bidding at judicial sales, courts now uniformly hold that the mere offer to pay more than the price bid is not a substantial ground for setting aside a sale,* recognizing nothing Will more certainly tend to discourage and prevent bidding than a judicial determination that the highest bidder may be deprived of the advantage of his accepted bid by an offer of another person, subsequently made, to bid higher on resale. Morrisse v. Inglis, 46 N.J.Eq. 306, 19 A. 16; In re Metallic Specialty Mfg. Co., D.C., 193 F. 300; In re Shapiro, D.C., 154 F. 673." (Emphasis supplied.)

In Pewabic Mining Co. v. Mason, 1892, 145 U.S. 349, page 356, 12 S.Ct. 887, page 888, 36 L.Ed. 732, the Supreme Court said: "Yet the purpose of the law is that the sale shall be final; and to insure reliance upon such sales, and induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party prior thereto. * * *" See also Bovay v. Townsend, 8 Cir., 1935,

78 F.2d 343, 105 A.L.R. 359; American Trading and Production Corporation v. Connor, 4 Cir., 1940, 109 F.2d 871.

A clear exposition of the governing principles is contained in Ballentyne v. Smith, 1907, 205 U.S. 285, at page 290, 27 S.Ct. 527, at page 528, 51 L.Ed. 803: "In England the old rule was that in chancery sales, until confirmation of the master's report, the bidding would be opened upon a mere offer to advance the price 10 per cent; but this rule has been rejected, and now both in England and this country a sale will not be set aside for mere inadequacy of price unless that inadequacy be so gross as to shock the conscience, or unless there be additional circumstances against its fairness. But if there be great inadequacy, slight circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify setting it aside. Graffam v. Burgess, 117 U.S. 180, 191, 192, 6 S.Ct. 686, 29 L.Ed. 839, 842, 843. It is difficult to formulate any rule more definite than this, and each case must stand upon its own peculiar facts."

The rationale of the policy requiring confirmation of judicial sales in the absence of gross inadequacy, unfairness, fraud, etc., is succinctly stated in Knight v. Wertheim & Co., 2 Cir., 1946, 158 F.2d 838. Said the court in discussing judicial sales in bankruptcy proceedings, pages 843, 844 of 158 F.2d: "*We recognize that except upon the extremest provocation, courts will not upset a judicial sale at auction, upon the ground that a new bidder has appeared who offers more than the knock-down price.* (citing cases). This unwillingness results from the effect upon such sales of knowing that a prospective bidder may abstain from bidding at the auction, may bide his time, and may then outbid the price at which the property has been struck down. That possibility tends to chill bidding at the sale, to dispose of the property by later competition on successive bids, and thus to defeat the very purpose of an auction, which is to fetch together all those who may be interested to buy and to set them against each other with whatever stimulus that may provide, as opposed to other kinds of sale." (Emphasis supplied.)

In the Matter of Burr Mfg. & Supply Co., 2 Cir., 1914, 217 F. 16, the appellate tribunal held that the fact that the property at the first sale brought $6,250 compared to $8,500 at the resale, did not of itself establish such gross inadequacy as to warrant the resale.

In Sturgiss v. Corbin, 4 Cir., 1905, 141 F. 1, the high bid for a parcel of real estate at a judicial sale was $200,200. When the matter came up for confirmation a bid of $208,000 was submitted by another bidder and accepted by the bankruptcy court. The sole reason for the court's action was its desire to benefit the bankruptcy estate just as in the instant case. The appellate tribunal reversed the action of the bankruptcy court and remanded with directions to confirm the sale on the $200,200 bid. Said the court, page 3 of 141 F.: "A sale made under a judicial decree will not, when no misunderstanding existed among the bidders, and when no fraud is shown, be set aside for mere inadequacy of price, unless such inadequacy is so gross as fairly to raise a presumption of fraud. The practice of opening biddings and of setting aside sales made during the progress of judicial proceedings should not be encouraged, as it is not conducive to the interests of litigants, and it tends to shake public confidence in the validity and finality of judicial sales, and to unduly prolong litigation. A purchaser at a judicial sale, who has complied with the terms thereof, or who shows his willingness and ability so to do, is not only entitled to the protection of the court, but as a party to the proceeding, made such by his purchase, is so situated as to be entitled to the court's decree of confirmation, in the absence of the inadequacy, fraud, or mistake before alluded to."

In the case of In re Metallic Specialty Mfg. Co., D.C.E.D.Pa.1912, 193 F. 300, the high bid at a judicial sale was $17,000. On submission of a subsequent bid of $20,000, the Referee in Bankruptcy set aside the sale and accepted the higher bid. The district court reversed the action of the Referee and remanded with directions to confirm the $17,000 judicial sale bid.

Applying the long-established legal principles enunciated in the cases cited to the facts in the instant case, it is plain that there was no justification for the bankruptcy court's failure to confirm the Galman bid made at the public sale and that it committed an abuse of discretion in failing to do so.

It is now contended that Galman "waived" the rights which accrued to him as high bidder at the public sale when he submitted a higher bid at the confirmation hearings following the court's refusal to confirm the public sale and its adoption of the role of auctioneer. That contention is without merit.

Having determined that the court below abused its discretion in failing to confirm the Galman bid at the public sale, we are nevertheless constrained to rule on the secondary question, whether the court committed further error in selling the property to the Gaby Company at the hearings fixed for the confirmation of the Galman bid, because of its importance in the administration of bankruptcy matters. On this score we are of the opinion that reversible error was committed.

The sole matter before the court was the confirming or setting aside of the public sale. If the court decided not to confirm, but rather to entertain other offers, every consideration of fairness dictated that the public at large be given notice to that effect, so that all might have had an equal opportunity to make or increase their bids if they so desired. See Everett v. Forst, 1921, 50 App.D.C. 215, 269 F. 867, 869. To sanction the method adopted by the bankruptcy court here, it seems to us, would be a retrogression to the old, now-repudiated English rule. It would sap the confidence in judicial sales and give an unfair advantage to those who choose to conduct their negotiations only after they ascertain the limits of their competitors' bids, rather than to pit their bargaining power against that of those who accept the invitation of the court to attend and bid at public sales.

Examination of the authorities appears to us to support the principle outlined above. In Pewabic Mining Co. v. Mason, supra, the Supreme Court said, 145 U.S. pages 356, 357, 12 S.Ct. page 888, 36 L.Ed.

732: "In January, 1890, as stated, the final decision was announced. At that time each party knew that a sale was to be had, and that, if it intended to buy, it must make all its arrangements therefor, and in such arrangement must be included a determination of the full amount it was willing to bid for the property. *It cannot be tolerated that it be in the contemplation of either to wait until after the property has been struck off to the other, and then open the bidding and defer the sale by an increased offer."* (Emphasis supplied.)

Rather than condone appellee's failure to bid at the proper place and time, it was incumbent upon the court below, in view of the circumstances, to follow the instructions contained in Jacobsohn v. Larkey, supra, 245 F. at page 543, L.R.A.1918C, 1176: "Having found gross inadequacy of the price bid at the first sale, the court might validly set aside that sale on that ground *and at the same time make an order for a second sale conditioned upon terms* that would secure to the estate whatever advantage it derived from the bids at the first sale." (Emphasis supplied.)

Cf. Bovay v. Townsend, supra, in which the court, discussing a judicial sale, said, 78 F.2d page 346, 105 A.L.R. 359: "We are of opinion that the sole power of the court lay in either approving and confirming the sale or in setting it aside *and ordering another sale upon proper statutory notice."* (Emphasis supplied.)

For the reasons stated, the order of the court below will be reversed and the cause remanded with directions to confirm the Galman bid at the public sale.

O'CONNELL, Circuit Judge, with whom McLAUGHLIN, Circuit Judge, concurs (dissenting).

I am in full accord with the reasoning and conclusion of the majority of this court that the court below committed reversible error in awarding the property in question to the Gaby Company. I am constrained to disagree, however, with that portion of the majority opinion which holds that the lower court abused its discretion in refusing to confirm the judicial sale.

The holding of the majority of this court, it seems to me, is tantamount to an assertion that, under the circumstances of the case at bar, confirmation by the bankruptcy court was a mere ministerial act. In the face of repeated judicial declarations that confirmation lies within the discretion of the bankruptcy court,[1] I am not prepared to say that the court below was *required* to confirm the action of the trustees in bankruptcy purely because the facts established that the judicial sale was in no wise irregular and that the winning bid was in excess of the appraised value of the property. That the court below chose to lend greater credence to the substantial discrepancy between the bid of the Gaby Company and that of Galman, in my opinion, was a decision peculiarly within its province; and, while I might have reached a different result had I been in the position of the court below, I believe that it cannot be held, as a matter of law, that the contrary conclusion of the bankruptcy court was arbitrary.

The recital of facts in the majority opinion indicates that the court below apparently was motivated primarily by the desire "to obtain the higher price in the interest of the creditors." I note, however, that the court below on at least two occasions commented upon the substantial percentage by which the Gaby Company offer exceeded that of Galman. With this in mind, can it be asserted categorically that the lower

---

[1] "When in a given case a price is grossly inadequate and when upon that ground confirmation should be refused, *are matters within the judgment and discretion* of the tribunal ordering the sale. When a trial tribunal orders a judicial sale subject to its confirmation under authority expressly requiring of it the exercise of discretion in approving or setting aside the sale (Bankruptcy Act, § 70, sub. b, [11 U.S.C.A. § 110, sub. b]), *an appellate tribunal will not reverse its discretion by substituting its own* nor will it otherwise disturb or interfere with its exercise so long as it does not amount to an abuse of discretion." Jacobsohn v. Larkey, 3 Cir., 1917, 245 F. 538, 542, L.R.A.1918C, 1176; emphasis supplied. See also Shipe v. Consumers' Service Co., 7 Cir., 1928, 29 F.2d 321, 322, certiorari denied sub nom. Tudor v. Schindler, 1929, 279 U.S. 850, 49 S.Ct. 347, 73 L.Ed. 993; Currin v. Nourse, 8 Cir., 1933, 66 F.2d 137, 140; In re Yost & Cook, 6 Cir., 1934, 70 F.2d 614, 616; and Prentice v. Boteler, 9 Cir., 1944, 141 F.2d 175, 176.

court did not find a gross inadequacy of price? I think not.

The majority opinion cites and quotes from a number of cases which stress the necessity of maintaining the efficacy of well-conducted trustee sales. With these sentiments I fully agree. It is certainly questionable, however, whether the desired result can be attained through the curbing of the discretionary power of the bankruptcy court; for the inhibiting of that power may well be an invitation to fraud and collusion in the conduct of future sales. As I analyze the cases cited in the majority opinion, the conclusion of the majority of this court is neither required nor contemplated by previous decisions. Seldom has the exercise of discretion by the bankruptcy court been challenged successfully on review. Thus, in Jacobsohn v. Larkey, 3 Cir., 1917, 245 F. 538, L.R.A.1918C, 1176, our court affirmed a refusal of confirmation based upon gross inadequacy of price. In Pewabic Mining Company v. Mason, 1892, 145 U.S. 349, 12 S.Ct. 887, 36 L.Ed. 732, the Supreme Court affirmed a confirmation. In Bovay v. Townsend, 8 Cir., 1935, 78 F.2d 343, 105 A.L.R. 359, the Circuit Court found no fault with the confirmation, but reversed the lower court upon another ground. In American Trading & Production Corporation v. Connor, 4 Cir., 1940, 109 F.2d 871, the Circuit Court affirmed a refusal of confirmation based upon gross inadequacy of price, even though the public sale had been fully advertised and fairly conducted. In Ballentyne v. Smith, 1907, 205 U.S. 285, 27 S.Ct. 527, 51 L.Ed. 803, the Supreme Court affirmed a refusal of confirmation based upon gross inadequacy of price, despite the absence of fraud and although the sale was apparently regular in all respects. Knight v. Wertheim & Co., 2 Cir., 1946, 158 F.2d 838, was a reorganization proceeding which the Circuit Court expressly distinguished from the question sub judice.

The two cases cited in the majority opinion which did reverse the bankruptcy court on the question of confirmation remain to be considered. In the Matter of Burr Mfg. & Supply Co., 2 Cir., 1914, 217 F. 16, is clearly distinguishable, since the bankruptcy court actually confirmed the sale and subsequently attempted to vacate the confirmation. The Circuit Court held, on appeal, that the purchaser had gained equitable title as the result of confirmation, which right could be quashed only for cause. Finally, Sturgiss v. Corbin, 4 Cir., 1905, 141 F. 1, involved a set of facts vastly different from the case at bar. A sale by public auction was set aside by the bankruptcy court, and a resale was held at the bar of the court, in the presence of the bankruptcy judge, and with all parties present. Sometime after the second sale, the bankruptcy court, as the result of the receipt of an offer which was less than 4 per cent higher than the sale price at the court sale, ordered still another resale. The Circuit Court, 141 F. 4, stressing that the sale had been conducted in the presence of the confirming power and that the subsequent bid "was not of such a character as would demonstrate inadequacy of price," directed that the sale made at the bar of the court be confirmed.

It would appear from the foregoing review that appellate courts have been, and should be, chary of substituting their judgment for that of the bankruptcy court. Application of this principle, in my opinion, warrants the conclusion that the facts of the case sub judice do not spell out an abuse of discretion in refusing confirmation of the sale to Galman.

I believe, therefore, that the bankruptcy court, having exercised its discretionary power to withhold confirmation, was obliged to order a resale of the property in question, at which all interested would have the opportunity to bid, in accordance with the procedure set forth in the quotations from the Pewabic Mining Co., Jacobsohn, and Bovay cases contained in the concluding paragraphs of the majority opinion. See also American Trading & Production Corporation v. Connor, supra, in which Circuit Court affirmed confirmation of a resale, and Sturgiss v. Corbin, supra, in which the Circuit Court ordered confirmation of a resale.